# THE COBB CHOCOLATE COMPANY

*v.*

## ALFRED KNUDSON.

*Opinion filed February 17, 1904.*

1. MASTER AND SERVANT—*foreman should take reasonable precautions when ordering servant to do special work.* In ordering a servant to perform work with which he is not familiar it is the foreman's duty to take reasonable precautions for the safety of the servant.

2. SAME—*whether servant should have refused to obey order is for the jury.* Whether the risk attendant upon obedience to the foreman's command was so great that an ordinarily prudent person, under the facts shown by the evidence, would have disobeyed the order, is a question of fact for the jury.

3. SAME—*when servant's knowledge of danger does not relieve master from liability.* The rule precluding recovery by a servant who continues in his employment after he has knowledge of the master's failure to provide a safe place in which to work and of the danger of the work, does not apply where the servant is acting in obedience to the master's orders to do work which is outside of the regular employment.

4. APPEALS AND ERRORS—*when action of court in limiting number of instructions will not reverse.* Limiting the number of instructions in a personal injury case is not ground for reversal, where it appears that the instructions refused were covered by those given, and it is not shown wherein the restriction was prejudicial.

5. INSTRUCTIONS—*instructions may be limited to particular counts.* Instructions for the defendant in a personal injury case may be limited by the court to the count containing the charges which such instructions are designed to meet, where, as to the other counts, the instructions would be improper.

6. SAME—*giving instruction after erasing interlineations is not reversible error.* Giving an instruction, which the court had marked refused and noted his reasons thereon, after erasing the notations and an interlineation intended as a modification by drawing a pen through the words, leaving them still legible, is not reversible error.

7. TRIAL—*when limiting argument to thirty minutes is not an abuse of discretion.* Limiting defendant's argument to the jury in a personal injury case to thirty minutes is not an abuse of discretion, where only six witnesses testified, the testimony of none of them being extended and that of some of them very brief.

8. CONTINUANCE—*when refusal to grant continuance is proper.* Refusal to grant a continuance for an absent witness is proper, where

his testimony, so far as the affidavit discloses, would not materially militate against the theory upon which plaintiff's case was tried and where it does not appear proper diligence was exercised.

*Cobb Chocolate Co.* v. *Knudson*, 107 Ill. App. 668, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

This is an action of trespass on the case by appellee, plaintiff below, against appellant, a corporation, defendant below, in the superior court of Cook county, to recover damages claimed by appellee for injuries sustained by him on September 15, 1899, while working for appellant in its chocolate factory in the city of Chicago. Appellee was injured by his fingers getting caught in the uncovered, revolving cog-wheels of a machine at and about which he was working. Trial was had before a jury, resulting in a verdict and judgment against appellant for $2500, which judgment was affirmed by the Appellate Court. From the judgment of affirmance appellant prosecutes this appeal.

The machine in question consisted of three granite rollers about twenty-three inches long and nine inches in diameter. Above the rollers was a hopper, into which the chocolate was poured and which then ran from the hopper on to the rollers. The rollers were revolved by means of gearing or cog-wheels attached to the machine at the south side of the machine. The rollers were set in an iron framework. The clearance between the inside of the frame and the end of the roller at the south side of the machine was about three inches. The framework between the south end of the roller and the cog-wheels which operated the rollers was three inches wide, and the distance between the south side of the frame of the machine and the nearest cog was about three inches. The belting which operated the machinery and the cog-

wheels was operated by means of a shifter, which was located a short distance from the machine. By moving the shifter in one direction the belt would be thrown off the pulley and the machine would be stopped; by moving the shifter in the opposite direction the belt was re-adjusted and the machine put in operation. About ten days prior to the accident the appellee, then about seventeen years of age, was employed by appellant to do various kinds of work about the factory, part of said duties being to attend these chocolate rollers at the machine about which he was injured; that in connection therewith he would shovel chocolate into the hopper above the rollers; that the chocolate, passing down on to the rollers, would at times run over the edges thereof, and in such event appellee was required to scrape it up with a knife and return it to its proper place. The cog-wheels spoken of were on the outside of the machine frame, and uncovered, but in the performance of the duties spoken of, appellee was not brought in close proximity to the same.

The declaration contained two counts, the principal averments of the first being, that plaintiff's employment was not attended with hazard or danger; that he was ordered to clean the rollers and wipe all the machinery around the rollers with a piece of waste; that the cog-wheels and gearing, part of said machine, were unguarded, rendering it dangerous to work in close proximity thereto and to do the work ordered done; that plaintiff was ignorant of the danger and it was defendant's duty to so notify him, but defendant negligently failed so to do; that while plaintiff was so engaged, exercising due care and caution, said waste was caught in said cog-wheels, drawing in plaintiff's fingers and permanently injuring them. The second count averred substantially the same as the first, and in addition that the defendant carelessly suffered said revolving cog-wheels to be and remain without any guard, protection or shield,

and negligently ordered the plaintiff to do such work of cleaning said machine near said cog-wheels·without in any way endeavoring to protect, guard, warn or instruct the plaintiff of the danger of said work, and by reason of said negligence the plaintiff, while in the exercise of due care, etc., was injured, etc. The plea was the general issue. At the close of the entire case appellant presented and asked the court ·to give a peremptory instruction directing a verdict in its favor, which instruction was refused by the court.

· Various errors are assigned by the appellant, and an effort will be made to discuss the same in the order presented in the brief of counsel.

HENRY B. HALE, and COX, HELDMAN & LIPSON, (F. M. COX, of counsel,) for appellant.

EDMUND S. CUMMINGS, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

The jury having returned a verdict in favor of appellee, on which judgment was duly entered by the court, and that judgment having been affirmed by the Appellate Court, all questions of fact are conclusively settled, except in so far as the same may be considered by this court for the purpose of determining whether there was evidence tending to support plaintiff's cause of action as alleged in his declaration, which question is presented by the presentation and refusal of appellant's peremptory instruction, and said refusal being assigned by the appellant as error.

The appellee testified that he was nineteen years of age; that he had worked for appellant about ten days prior to September 15, 1899, the day of the injury; that he was hired by William Collins, who, to use appellee's words, "started me off with Jack Rush, foreman on the first floor; Rush put me to work running the chocolate rollers, sweeping, going down for chocolate butter and

to the ice-box, and doing everything,—shoveling choco-
late and doing everything all around the shop; Rush gave
me instructions as to the different work I did;" that on
the 15th of September he was running the little choco-
late roller; that he shoveled chocolate into the box on
top of the rollers, and with a knife he would scrape the
rollers when necessary; that on the outside of the frame
of this machine were uncovered cog-wheels, with which
he had nothing to do in his work; that on the day in
question he was injured a few minutes past five o'clock;
that he was cleaning the rollers with a knife, when Mr.
Cobb, the president of the corporation, came in, and up-
on looking around said, "This machine looks pretty dirty
all around;" that in a little while Collins, the superin-
tendent, came to him and said: "The old man says it
looks pretty dirty around here; you better clean up; you
better clean around—clean up;" that Collins then went
over to Jack Rush, who was foreman and under Collins,
and directly Rush came over and started telling how to
clean up. Appellee said: "I was nearly done cleaning
the machine, and he put me to work outside of the ma-
chine, on framework,—at the other side of the belting,
right near the cog-wheels there. At this time Rush was
at the other side of the machine leaning on the shifter
with his elbow. The shifter was on the right-hand side
of him and about five feet away from me. This was the
shifter that started and stopped the machine. There
are two cross-pieces. I started to clean one—to take the
dirt out with a knife. I never saw it cleaned while I was
there. I took that out with a knife and started to wipe
it out, and when I got through Rush was leaning on the
shifter with his elbow and he told me to wipe the space
off right near the cog-wheels. He was watching me and
pointing out where I should clean. He says, 'Clean it
right there,' and started pointing where I should clean.
He said, 'Wipe off that there,' and then he would point
to where I was to clean. He pointed at these spots, and

they were near the cog-wheels.   I kept right on wiping
one thing after another and he staid there watching me,
and finally the waste got caught and pulled my hand in
the cog-wheels." He said Rush then stopped the machine
and took him to the office, where the doctor came; that
his first finger was crushed at the first joint, the second
finger at the second joint and the third finger at the third
joint; that when he was cleaning around the gear Rush
did not say anything, "only just clean up the chocolate."
He further stated that from where he was cleaning to
where his fingers were caught was about an inch or two;
that he got the waste from a box about twenty-five or
thirty feet from where he was working; that Collins
told him to get it; that he had a bunch of waste about
as large as his hand and used it as a mop to clean the
framework; that he had to hold the waste loose in his
hand and there were long pieces of it hanging down; that
when his hand was caught he was leaning over, cleaning
the frame.   In his examination occurred the following
questions and answers:

Q. "Now, you knew that was dangerous, didn't you?

A. "No, I didn't think it was dangerous.

Q. "You didn't?

A. "No; I thought if it was dangerous he would shut
the machine off, because he was leaning right on the
shifter.

Q. "You mean that you did not know it was danger-
ous to work with your right hand close to the cog-wheel
with a piece of waste in your hand?

A. "No; I thought if it was dangerous he would have
sense enough to shut the machine off.

Q. "Have you not as much sense as he?

A. "No; I was only a boy; I had not done much prac-
tical work then and he was foreman in the place, and I
thought he knew more about it than I did.

Q. "You were only seventeen years old?

A. "Yes, sir.

Q. "You let Rush do your thinking for you; is that right?

A. "Yes, that is right—for the foreman."

Appellee further stated that he had worked several different places where there was machinery, and manifested some knowledge of the dangers arising therefrom.

Elmer Jansen, on behalf of appellee, testified that on the day of appellee's injury he was working in appellant's factory and about five or six feet from appellee; that the nature of his work was similar to that of appellee's. He corroborated appellee as to the visit of Mr. Cobb, and as to the direction of Collins to appellee to get the waste, and as to Jack Rush going over to appellee while he was cleaning his machine, and stated that Rush pointed where appellee should clean but he could not hear what was said, and that Rush staid there until the accident occurred.

William Falkenberg testified, in behalf of appellee, that he also worked on a machine just across from him; that Rush gave them directions as to what to do; that he saw plaintiff when he got hurt, being distant six or seven feet. He told of the visit of Mr. Cobb, of Cobb going over to Collins, then of Collins going and talking with plaintiff and then to Rush, after which Rush came to witness and said, "Get a broom and sweep up around here;" that he started to do so, and presently heard some one holler; that he turned around and saw plaintiff was hurt, and that Rush at the same time shut off the machine; that before Rush shut off the machine, he, Rush, was leaning on the shifter.

These three witnesses were all who testified in behalf of plaintiff. On behalf of the defendant, Jack Rush, Mr. Cobb and John Fisher testified. Fisher worked for defendant at the time of the injury and saw plaintiff about fifteen minutes before the injury, when he was cleaning the machine; that he did not see him again before the accident; that at the time of the accident he saw Rush

jump and shift the belt; that he did not see where he jumped from, but he was probably four or five feet from the machine. Rush, defendant's witness, denied directing appellee as testified to by him, and also stated that he had told him not to clean the gears, and that he had also given instructions for the boys not to use waste. Mr. Cobb testified as to his visit to the factory on the day in question, but he had passed from the room where the accident occurred, prior thereto. He further testified as to the arrangement of the machinery.

The above mentioned witnesses were the only witnesses who testified at the trial. There was a conflict between the evidence of the plaintiff and the defendant, but it was the jury's, and not our, province to weigh and reconcile the same. We are only called upon, in this instance, to determine whether there was evidence tending to support the plaintiff's declaration, and it is our opinion that there was adduced ample evidence that at least tended to show that appellee was acting under specific orders of appellant's foreman when he sustained the injury in question, and that, although the cog-wheels wherein the appellee's fingers were caught were uncovered and plainly visible, there was nothing inherently dangerous in the work he was called upon to do. According to appellee's testimony the defendant's foreman was standing a few feet from him, pointing out just what he should do and where he should clean; that his arm rested upon the shifter and in an instant he could stop the machine. Under such supervision it is but natural that appellee's attention was closely fixed upon his work. The waste that he says he had in his hand may have, without negligence on his part, so hung as to become entangled in the revolving cog-wheels and in an instant drawn his hand to the place of danger. Under such circumstances appellee was relieved of the responsibility that might otherwise have been his. Appellee testified that such work was not in the usual line of his employment, and

he well may have failed to appreciate the extent of the danger thereof. Appellee was in a subordinate position and obedience was his duty, unless in so obeying he acted recklessly and without that degree of prudence that would ordinarily have been exercised by an ordinary person of his age, experience and understanding. It was the duty of appellant's foreman to take reasonable precaution for the safety of appellee when he ordered him to work where appellee claims he did and under the circumstances there existing. Whether appellee, under the circumstances disclosed by the testimony herein, acted recklessly, or as a reasonably prudent person under similar circumstances would have acted, were questions of fact to be determined by the jury. *Chicago Edison Co.* v. *Moren*, 185 Ill. 571; *City of LaSalle* v. *Kostka*, 190 id. 130; *Western Stone Co.* v. *Muscial*, 196 id. 382; *Chicago Anderson Pressed Brick Co.* v. *Sobkowiak*, 148 id. 573; *Illinois Steel Co.* v. *Schymanowski*, 162 id. 447; *Illinois Steel Co.* v. *McFadden*, 196 id. 344; *Offutt* v. *World's Columbian Exposition*, 175 id. 472.

In this case we would not be warranted in saying that there was no evidence tending to support the conclusion of the jury that appellee, by the testimony offered in his behalf, established the material averments of his declaration, hence we must hold that there was no error in the court's refusal to give appellant's peremptory instruction.

It is, however, urged by appellant's counsel that the relative position of appellee and the point of the machinery where the injury is said to have been occasioned, and because of the structure and arrangement of the machinery, it was physically impossible for the appellee to have been injured in the manner testified to by him. While the photograph of the scene of the accident that is in the bill of exceptions doubtless conveys to an observer a very good impression of the situation, and though the calculations of counsel may be without fault so far as may now be determined, although there is a conflict in the evidence as to the basis of such calculations, it would

be folly for us, with our present imperfect means for
determining such result, to say appellee could not have
been injured in substantially the manner described by
him.   He was leaning over the machine, and if the waste
claimed to be in his hand was hanging down far enough
to reach the cog-wheels underneath or to one side, and
was caught therein, results might happen that it is now
impossible to calculate.   The inexplicability of accidents
is a phase of life familiar to all.

After the jury were empaneled, and before the first
witness was sworn, the court entered an order limiting
the number of instructions to be given to thirty,—fifteen
for plaintiff and fifteen for defendant,—and that no in-
structions in excess of that number would be examined
or received by the court.   Appellant insists that such or-
der was reversible error.   In the case of *Chicago City Rail-
way Co.* v. *Sandusky*, 198 Ill. 400, an order substantially the
same was entered, and while the court there deprecated
the giving of a useless number of instructions, as is so
often done, yet it was declared that it was not proper to
lay down a hard and fast rule stating the number of in-
structions that should be given in a case, it being stated
that many times a larger number of short, concise instruc-
tions were preferable to a limited number of long, diffuse
and complicated instructions.   In that case the number
of instructions was limited to twelve on a side and the
appellant had introduced twenty in excess of that num-
ber, but in its argument only dwelt upon the injury al-
leged to have been sustained by the refusal of one of the
twenty instructions not received, and the court being of
the opinion that the substance of that instruction was
contained in an instruction that was given for the appel-
lee, refused to reverse the case.   So in the case at bar,
upon an examination of the instructions not received,
three in number, we find that the substance of each of
them was contained in instructions given.   The witnesses
in this case were few in number and the issues simple, so

appellant was not unduly hampered by being allowed but fifteen instructions. Nor do counsel for appellant, in their contention, point out wherein they were unable, in such number of instructions, to cover the points involved, nor have they shown wherein their cause was prejudiced by such restriction, and we do not see how it could have been, and regard the contention as not well taken.

It is next contended by appellant's counsel that the trial court erred in modifying instruction No. 7 offered for appellant, by inserting therein the clause, "and without special orders from defendant's foreman to do the work in question, and in doing which the accident happened to the plaintiff," and in writing on the margin of said instruction the words, "Refused, as ignoring specific proof of specific orders to do the work in question, and for other reasons," and in also writing thereon the words, "Insertions and erasures by the court;" and by writing on the margin of appellant's eleventh instruction, "Refused, as ignoring specific proof of specific orders, and for other reasons," and in then drawing a pen through all of said words so written in both of said instructions and noted on the margins thereof, in such way as to leave them legible and plainly to be read by the jury. Appellant's contention is, that by the interlineations and writing of the court, though a line was afterwards drawn through the same, undue prominence was given to special features, and that by such writing by the court the jury were erroneously influenced. A number of cases are cited by appellant to sustain this contention, but in our opinion they all fall short of such result. The words crossed out did not constitute a part of the instructions, and without them the instructions were, so far as this objection goes, as appellant desired, and not subject to objection. The instructions must have been read to the jury as presented by appellant, and if afterwards, upon inspection, they found in them certain interlineations

which had been crossed out by the judge, in our opinion it is more reasonable to assume that they were especially impressed with the fact that the judge regarded such interpolations out of place else he would not have crossed them out, and that they should not consider the same, than to assume that the jury were controlled by them to the prejudice of appellant.  In the cases cited and commented on by appellant, the language which it was claimed gave undue prominence to a particular point was read to the jury, and in many of them, by means of italicized words or otherwise, special stress was given to the particular language, or the particular part of the instruction that was crossed out was considered by the court to have been necessary to make the instruction good as a whole.  In instruction No. 15 given to the jury they were specially instructed that the court did not "intend to indicate to the jury in any instruction, or language used therein, or by anything that may have been said by the court during the progress of the trial, what the fact or facts are upon any question in this case," and that in considering the case the jury "should look solely to the evidence for the facts and to the instructions of the court for the law of the case," and also that the "instructions given by the court must be accepted by the jury as the law governing the case, and the jury will not be justified in finding a verdict contrary to the law as laid down in the instructions."  In the cases of *Union Railway and Transit Co.* v. *Kallaher*, 114 Ill. 325, and *West Chicago Street Railroad Co.* v. *Dedloff*, 92 Ill. App. 547, it was held that it was not likely that a jury would be misled by portions of instructions so imperfectly erased or crossed out as to leave them legible, and in the present case we think the objection is without merit.

The court limited instructions Nos. 7, 8, 9 and 11 to the second count of the declaration, and this the appellant insists was error.  The first count of the declaration charged that appellant ordered appellee to work in close

proximity to the revolving cog-wheels, which work was attended with hazard and danger, of which hazard appellee did not know, and appellant negligently and carelessly failed to warn and instruct appellee with reference thereto. The second count charged that the cog-wheels were wholly unprotected and unguarded, and that appellant carelessly and negligently failed to protect, guard and shield said wheels. Instructions 8 and 9 were based upon the proposition of the cog-wheels being unprotected and uncovered, and limiting said instructions to the second count of the declaration, on the charges of which they were especially based, was proper. Instructions 7 and 11 were based upon the proposition that appellee assumed the risk of dangers plainly visible and understood by him. The evidence clearly showed that the cog-wheels by which the injury was caused were unguarded and unprotected, and the said instructions were, then, applicable to the second count of the declaration, based, as it was, upon the danger and hazards of unguarded and unprotected cog-wheels; but the said instructions, as drawn, did not take into account the effect of specific orders, which there was evidence tending to show, from appellant to appellee to work in close proximity to unguarded and unprotected cog-wheels,—a place of particular hazard,—and the risk assumed thereby, and so such instructions, in the manner given, were not proper under said first count, and the limitation by the court was not error.

The refusal of the court to give instructions 2*e*, 5*d* and 13, offered by appellant, is by it assigned as error. Instruction 2*e* was to the effect that if plaintiff knew, or by ordinary care might have known, that the use of waste by him at the time of and in the work in question was dangerous, yet voluntarily used the same, the defendant was not guilty. This the court refused, as omitting the element of "causal relation, and for other reasons." Instruction 5*d* was to the effect that if plain-

tiff knew of the danger complained of in the declaration, and knew of defendant's failure to provide a safe place and materials in and with which to work, yet, notwithstanding such knowledge, continued in his work, etc., then the defendant was not guilty. This instruction was refused by the court because of "ignoring proof of specific orders to do the work in doing which plaintiff was injured, and for other reasons." Instruction 13 was to the effect that if plaintiff knew, or by the exercise of reasonable care might have known, of the danger and hazards of his employment, if any such existed, or that in the discovery of such danger and hazard the plaintiff failed to exercise such observation, skill and judgment as he possessed, then the jury should find the defendant not guilty. This instruction was refused by the court "as omitting causal relation between such danger and hazard and the happening of the accident, giving proof of specific orders, and for other reasons." We think, under the evidence, for the reasons assigned by the court, each of said instructions was improper and the refusal thereof was no error.

Counsel for appellant next insist that the court erred in giving to the jury instruction No. 1 as modified, and in modifying the same. The modification consisted in telling the jury that appellee undertook and assumed all ordinary risks incident to his employment and known to him. The instruction as tendered left out of consideration the question of appellee's knowledge of the dangers and hazards of his employment, and was therefore entirely too broad to be accurate. As said in *Pittsburg Bridge Co.* v. *Walker*, 170 Ill. 550, in speaking of a similar instruction (p. 555): The instruction "refused assumes to state, as an abstract principle of law, that every employee is presumed to understand and assume the ordinary risks and hazards of the employment, but it is so framed as to be open to the construction the presumption includes every character of peril or danger that may

207—30

possibly arise in the performance of the duty. An employee assumes the risks of known dangers, and such as are so obvious that knowledge of their existence is fairly to be presumed; but the law does not imply he has notice of dangers or perils not obvious to the senses, and arising solely out of extraordinary or exceptional circumstances.—Wharton on Negligence, sec. 206." In *Lake Erie and Western Railroad Co.* v. *Morrissey*, 177 Ill. 376, a modification of an instruction similar to the one here in question was approved, and we are of the opinion that in this instance no error was committed.

Counsel for appellant next contend that the court erred in giving to the jury plaintiff's instruction "A." Said instruction was as follows:

"The court instructs the jury that if they believe, from the evidence, the foreman of the defendant ordered the plaintiff to work where he was working at the time of the accident in question, the said foreman was chargeable with the specific duty of exercising reasonable care to see that the place where he ordered the plaintiff to work was reasonably safe, and the plaintiff had the right to rely upon the performance of such duty by the foreman before he ordered the plaintiff to work."

The evidence tended to show that appellee was ordered by appellant's foreman to do the particular work in which he was engaged at the time the injury occurred, and in view of such evidence and the averments of the declaration said instruction appears to be in harmony with the cases cited in the beginning of this opinion. Other instructions given in the case told the jury that appellee, in order to recover, must have been in the exercise of reasonable care and caution for his own safety, and that dangers patent, obvious and understood by him were assumed by the plaintiff, so the jury could hardly have been misled by said instruction, even though it did not define the relation of plaintiff and defendant as fully as it should.

Counsel for the appellant further complain that the court abused its discretion in limiting the appellant to thirty minutes in which to argue the case before the jury. There were only six witnesses—three on each side. The testimony of none of these witnesses was very extended and that of some of them was very brief. We can not say that the discretion of the trial judge, under such circumstances, was abused, nor perceive that the rights of appellant were unduly prejudiced by the rule.

It is objected that the court erred in the admission of improper testimony offered by appellee and in permitting appellee to ask leading questions of the witnesses in rebuttal. The testimony objected to was that elicited by the question put to appellee's witness Jansen, "What were the duties of one running that machine?" Upon objection being interposed, counsel for appellee stated that his purpose was to show that the work in which plaintiff was engaged at the time he received his injury was not incidental to the work of running the machine. After some colloquy between the court and counsel the court replied, "Well, the witness may answer what he usually did about the machine,—not what it was his duty to do." The witness then answered: "I cleaned the tin box underneath the machine and whatever was on the floor; I took a knife and scraped that away, but I never cleaned alongside of the cog-wheels." The witness was here stopped, and upon objection and request from counsel for appellant that the answer be stricken, the court said, "Yes, that may be stricken out." We do not think that the action of the court in the regard above mentioned, or in the latitude given counsel for appellee to ask, in rebuttal, a few leading questions, amounted to reversible error.

Counsel for appellant next insist that the court erred in refusing to permit Mr. Cobb, president of the defendant corporation, to answer the question, "What, if anything, do you know about the witness Rush, at or before

the time of this accident, with reference to being a careful and competent foreman?" The question raised an immaterial issue and was upon an immaterial matter, and the objection to it was properly sustained.

Finally, it is contended that the court improperly refused appellant a continuance in the case. The ground on which the continuance was claimed was the absence of one Collins, who was superintendent of the appellant corporation at the time of the injury. Collins was, at the time of the trial, employed in Philadelphia and refused to return to attend the trial. Of this fact appellant was apprised by letter February 24, 1902. It is said that appellant's counsel, Mr. Cox, was sick from the day after this notice was received until March 4, 1902. The motion for a continuance was made on the day of trial, March 12, 1902, prior to which time it does not appear that any effort had been made to procure the deposition of Collins or to postpone the trial. The affidavit does not state that Collins was a witness to the happening of the injury, hence he could not have testified as to what then took place; but the affidavit does state that Collins notified Rush to direct appellee to clean up around the machine, so, as far as the affidavit discloses, the evidence of Collins, if present, would not have materially militated against the theory upon which appellee's case was tried. At any rate, we cannot say that appellant exercised such diligence in the matter that the court's refusal to grant its application for the continuance amounted to an abuse of judicial discretion.

Upon a careful review of this whole case we are of the opinion that no reversible error was committed in its trial, and therefore the judgment of the Appellate Court will be affirmed.