LEHTO v. ATLANTIC MINING CO.

1. MASTER AND SERVANT — PERSONAL INJURIES—WARNINGS — NECESSITY—QUESTION FOR JURY.

Where a boy of unusual intelligence was injured while attempting, within the scope of his employment, to shift a belt in the manner in which he claims he had been accustomed to do and had seen others, including his foreman, do, without instructions to the contrary, the question whether, without instruction or warning, he appreciated and so assumed the risk, is not a question of law but one of fact; and where defendant offers testimony tending to prove that instructions were given, another issue of fact is made, requiring submission of the issue to the jury.[1]

2. APPEAL AND ERROR—REVIEW—QUESTION OF FACT.

This court cannot determine from a model and drawings, assisted by testimony, that a verdict should have been directed for defendant on the theory that it was impossible for plaintiff to have been injured in the manner in which he claims, where the trial judge did not regard the demonstration at the trial as conclusive, and told the jury they had the right to consider it with all the other testimony.

---

[1] As to the duty to warn or instruct servant, see note to *James* v. *Rapides Lumber Co.* (La.), 44 L. R. A. 33.

3. MASTER AND SERVANT—PERSONAL INJURIES—ACTION—INSTRUCTIONS—PROPRIETY.

Where plaintiff testified that he had to exert his full strength and employ his weight to shift the belt by which he was injured, by the means which he employed, and, according to his theory, some older, or stronger, or heavier man might have performed the operation in the same way with less danger, testimony on the part of defendant that no particular force was needed, when the means provided was properly employed, is not controlling upon the question, so as to render erroneous an instruction submitting plaintiff's physical strength as an element of defendant's liability.

4. SAME—INSTRUCTIONS—WARNING—BURDEN OF PROOF.

Where plaintiff's case established, and defendant's emphasized, the youth of plaintiff, his inexperience, the imposition of the duty in the performance of which he was injured, and the performance of the act in a hazardous way to the knowledge of his superior and director, and the risk which was in fact assumed would and should have been removed by instruction and was therefore not necessarily or properly a risk incident to the employment, an instruction is not erroneous which places upon defendant the burden of proving that the necessary warning was given.

Error to Ontonagon; Cooper, J. Submitted January 24, 1908. (Docket No. 163.) Decided May 1, 1908.

Case by Toivo Lehto, by next friend, against the Atlantic Mining Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Chadbourne & Rees*, for appellant.

*John Kiiskila* (*Burritt & Burritt*, of counsel), for appellee.

OSTRANDER, J. Plaintiff, a boy 15 years old, was employed by defendant to perform certain duties connected with the operation of what are designated in the record "roughing machines," which perform the operation of separating copper and rough sand. Defendant had a number of these machines and on the same floor with

them a "grinder" run by a 12-inch belt passing from an elevated line shaft to and over a 36-inch pulley, running by the side of the grinder and close to the floor of the room. By the side of this pulley was an "idler," or loose pulley, to which it was customary to shift the belt when it was desired to stop the grinder. The belt had a speed of approximately 2,000 feet per minute, the upper side moving toward the pulley, the pulley revolutions being 230 per minute. No shifting device had been installed. On December 10, 1904, plaintiff attempted to shift this belt and was injured. He used a stick, kept for the purpose, applied it to the belt, and neither he nor any one else knows just what thereafter happened. In a suit brought to recover for his injuries, he recovered a verdict and judgment. In seeking a reversal of the judgment, appellant presents three main contentions, which are:

"(1) The motion of defendant made at the close of plaintiff's case and also at the close of the testimony to direct a verdict in favor of the defendant, and the request to charge to the same effect, should have been granted and given.

"(2) The court erred in submitting to the jury as an element tending to establish defendant's liability, that plaintiff did not have physical strength to enable him to perform the labor in question without injury to life or limb.

"(3) The court erred in charging the jury that 'the burden of proof is on the defendant to show that the plaintiff was warned.'"

In connection with the first he urges:

a. "The danger incurred by plaintiff in attempting to shift the belt in the manner in which he claims he did attempt it, was obvious."

b. "It must have been obvious and apparent to and capable of being fully appreciated by plaintiff, notwithstanding his age and alleged want of experience."

c. "Under any aspect of the evidence and considering his age and experience, plaintiff was guilty of contributory negligence."

d. "It is indubitably established that plaintiff could not have made the attempt in the manner he has described,

and therefore that he has given a false account of the accident."

1. Plaintiff described the operation, as he attempted to perform it, substantially as follows: He stood upon a sill or timber some 15 inches above the floor of the room, with the pulley, and of course the belt, in front of him, grasped the stick with a hand at each end, leaned over the pulley, applied the stick to the belt (the belt running toward him),

"Pushed the belt with all my might and weight on it. I weighed about 130 or 135 pounds. I had to use all my strength and all my weight to throw the belt off. On the 10th of December I don't know if I threw the belt off at this time or not. I tried to. The pulley and belt were in motion; it was running very fast. I got jerked on my hands, but I didn't know anything after that."

Counsel agree that it was exceedingly dangerous to attempt to shift the belt in the manner indicated. It appears that plaintiff was hired by defendant in July, 1904. He worked at the settling tank not quite a month, then at the "tables" for more than two months, then at the "roughing machines." During the last week of his employment, it was his duty as night shift to shift the belt for the purpose of stopping the grinder, and this he did each night, with perhaps one exception, from Monday up to Saturday night, when he received the injury. There was a guard rail in place between the grinder and the belt and the safe way to shift the belt was to stand behind this guard rail, lean over it, and, using the stick, force the belt from the fast to the loose pulley.

The testimony on the part of the defendant tends to prove that on Monday night of that week the shift boss, a man 49 years old, who had been working in stamp mills from the time he was 14 years old, and had served in almost every capacity in which a boy and man could be employed, finding that the plaintiff, after properly performing the other duties of his position, was about to shift the belt, came from his own position to see whether he pro-

posed to shift it in a proper manner. The boy took a position facing the pulley, substantially as he described his position on the night he was hurt. .But he held the stick, not with one hand at each end thereof, but with both hands at one end. The boss called to him, told him he must not do that in that way, took the stick, went in behind the guard rail, and with the guard rail across his chest pushed the belt off, saying to him:

"When you shift the belt that way your stick gets in there and you get in danger and you are killed.   *   *   * You musn't do it because you get the stick in there and you get under and you get killed."

And plaintiff said: "Yes, I see."

On Tuesday night, the boy took the same position he had taken the night before, but when he saw the boss was looking at him he went around behind the rail and pushed the belt off. On Wednesday night, the same thing happened, and the boss called to the lad and motioned to him and the boy again went in behind the guard rail and pushed the belt off, and that night after the machine had been oiled he said to the lad again:

"You musn't put the belt off the way you did last night. You will get killed."

The boy said that other boys did that, to which the boss replied:

"That doesn't make any difference. Never mind what the other boys do, you do it the way I tell you to do it and you will be all right."

If we understand the record, on Thursday and Friday nights the boss knew or assumed that the lad shifted the belt in the right way. He did not have to be told when to shift it or to perform any of his duties. He went about them as was required, without any commands. On Saturday night, the boss noticed the machine was checked and that it then started again. Looking over, from the position he occupied, he could not see the lad, and, coming down from the platform, found him lying under the

pulley. It was his judgment that he had attempted to use the stick in the manner in which he had been instructed not to use it, and got drawn under the pulley.

The testimony on the part of the plaintiff was that about a month before he began work on the roughing machines he was told by the shift boss to throw this belt, and did it; that the plaintiff had seen somebody do it before, throwing it off with a stick; that he took the stick with both hands and pushed the belt on the loose pulley as he had seen others do it; that he never had any instruction concerning the throwing of the belt and had never had any experience except in throwing this belt; that when he was told to throw the belt he took the stick and threw it off; that during the last week of his employment he, in the presence of the shift boss, shifted the belt six or seven times, using the stick and standing as he claims he stood on the night he was injured. He testifies that he had seen one of the other boys employed there, and the "skimmer" as he was called, and the shift boss himself, throw the belt in the same way. He denies having had his attention called to or knowing about the guard rail. At the trial, plaintiff was called upon to make a demonstration in the presence of the jury. Accurate distances were used and the theory of defendant that plaintiff could not have reached the belt from his position, holding an end of the stick in each hand, and that he must have held the stick by one end only, was exploited. With this sharp conflict of testimony, the trial judge refused to direct a verdict for defendant.

We have re-examined *Monforton* v. *Pressed Brick Co.*, 113 Mich. 39; *Hess* v. *Woodenware Co.*, 146 Mich. 566; *Berlin* v. *Mershon & Co.*, 132 Mich. 183; *Van Wyck* v. *Dickinson*, 148 Mich. 418; *White* v. *Owosso Sugar Co.*, 149 Mich. 473; *Pearce* v. *Quincy Mining Co.*, 149 Mich. 112, cited and relied upon by the plaintiff in error. We find in them nothing which warrants the ruling that this case should not have been submitted to the jury. Let it be assumed that the danger—some dan-

ger—was obvious. Let it be assumed, also, that the testimony given by the plaintiff was true. We have then the case of a boy, who counsel concedes and the court certifies was at the time of the trial of more than ordinary intelligence, employed to do the very thing in doing which he was injured. He had seen his boy predecessor in the place shift this belt, had seen a workman shift it, had seen his boss, director and instructor, shift it, had himself shifted it on five or six occasions. Upon the occasion of his injury, he attempted to shift it as he had seen the others do and as he had himself performed the operation. Undoubtedly it was dangerous work. But it was a part of the work to be performed, a part of plaintiff's duty, and upon the assumption which is indulged it could be performed as he performed it, safely. He had the right to suppose, in the absence of instructions, that he was doing his work, dangerous though it was, in a proper way. It was reasonably probable that his way of doing the work was a safe one if he used the skill and caution he had theretofore used and had seen others use. His way had the sanction of experience and of authority. Having been injured, his employer denies liability while asserting that there was a safe way to do the work; a way which, to plaintiff's knowledge, was never employed by the men or by the boss, and never made known to him. In such a case, the question whether, without instruction or warning, he understood—appreciated—and so assumed the risk, is not a question of law but one of fact. See *Allen* v. *Jakel*, 115 Mich. 484; *Ertz* v. *Pierson*, 130 Mich. 160; *Kolodziejski* v. *Seestadt*, 143 Mich. 38. And defendant having offered testimony tending to prove that instructions were given, another issue of fact was made.

As to the demonstration in the presence of the jury, it is clear that the members of this court cannot appreciate or determine from the model and drawings, aided by the testimony, how successful it was. It would appear that it would be impossible for plaintiff, standing where he said he stood and holding the stick in the manner he de-

scribed, to apply it to the belt, at the point indicated by him, without extending his body at full length over the pulley and lying down, so to speak, upon the belt. It is evident that the trial judge did not regard the demonstration as conclusive, and we are not in a position to reverse him upon this point. He told the jury they had the right to and should consider it in connection with all other matters in evidence.

2. A careful reading of the charge does not convince us that what the court said to the jury upon the subject of plaintiff's physical strength was prejudicial to defendant. Plaintiff testified that he had to exert his full strength and employ his weight to shift the belt by the means he employed. According to plaintiff's theory of the case, some older, or stronger, or heavier man might, it is to be inferred, have performed the operation, in the same way, with less danger. The testimony on the part of defendant to the effect that no particular force was needed when the stick was properly applied to the belt, is, clearly, not controlling of the question.

3. The court said to the jury in his charge:

"If the jury find that the plaintiff did not appreciate the danger because of his youth and inexperience, and that the defendant knew or should have known of the plaintiff's inability to appreciate said danger, then it was the duty of the defendant to caution and warn the plaintiff how to throw said belt so that the plaintiff might have knowledge equal to the knowledge of the defendant, and the burden of proof is on the defendant to show that the plaintiff was warned."

When the entire charge is read and considered, with reference to the theories of the parties and the testimony adduced, this portion of the charge stated the law correctly. Plaintiff's case established (and defendant's case emphasized), the legal duty of the defendant to instruct. It established the youth of the plaintiff, inexperience, the imposition of a duty to perform the act of shifting the belt, the performance of the act in a hazardous way, to the

knowledge of plaintiff's superior and director. The risk which was in fact assumed should have been removed and would have been by instruction. It was not necessarily or properly a risk incident to the employment. The principle involved is recognized in *Swoboda* v. *Ward*, 40 Mich. 423; *King* v. *Lumber Co.*, 93 Mich. 172; *McDonald* v. *Steel Co.*, 140 Mich. 401.

The judgment is affirmed.

GRANT, C. J., and MONTGOMERY, HOOKER, and CARPENTER, JJ., concurred.