Kate Glaich, Appellee, v. Hogan Envelope Company, Appellant.

### Gen. No. 15,517.

1. NEGLIGENCE—*when, for failure to instruct inexperienced servant, established.   Held,* under the evidence, that it was proper to submit to the jury the question as to whether the master was guilty of negligence in placing an inexperienced servant, sixteen years of age, at work upon a printing press without instructing such servant in the dangers of the employment, in the methods of doing the work and in the ways of avoiding injury.

2. INSTRUCTIONS—*when refusal as to interest of plaintiff not error,*

If there is no dispute as to the facts of a case, it is not error to refuse to give to the jury an instruction which calls attention to the interest of the plaintiff as bearing upon the question of credibility.

Smith, P. J., dissenting.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. Homer Abbott, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Affirmed. Opinion filed May 16, 1911. *Certiorari* denied by Supreme Court (making opinion final).

Winston, Payne, Strawn & Shaw, for appellant.

A. D. Gash, for appellee.

Mr. Justice Clark delivered the opinion of the court.

Appellee became sixteen years of age in November, 1906, and a few days thereafter entered the employ of the appellant, which maintained a printing establishment. Prior to this employment she had been at work for two years or thereabouts in two or more box factories, but had never worked around machinery until her employment by the appellant.

Appellant had among others five printing presses known as Gordon presses, one small one and four large ones. The work of appellee was tending one of these machines. She had been in that sort of employment for five weeks, and had been in charge of first one and then another of the presses. The work on all of the machines was practically the same, and consisted of the printing of envelopes and paper.

On the morning of December 24, 1906, she was instructed by the foreman to work at a particular press which, as the evidence discloses, was run at a higher rate of speed than any that she had theretofore operated. On this day she met with an accident which resulted in the loss of her right hand, it being so crushed that amputation above the wrist was necessary.

There was a trial before a court and jury, the verdict being for $7,000, judgment upon which was rendered. The only witnesses heard at the trial were the appellee herself and Polly Merhforth, who was sixteen years of age at the

time of the accident, and who was working at another press near appellee.

The only description of the construction and operation of the press was given by the appellee, being brought out in her cross-examination. She apparently was not a particularly bright girl, and her description is not as clear as we could wish. The record contains a photograph of the press, which gives an idea of its construction. In operating the press the appellee faced the machine directly in front of a feed board about the height of her waist, two and one-half feet long and a foot to fourteen inches in depth or width, which ran across the machine. On the right hand a little higher was another feed board upon which was placed the unprinted envelopes. A big fly-wheel was low down on the left side of the press and the shaft from this ran to the right hand side of the machine where a belt came down from the power shaft at the ceiling. A shifting lever was at the left hand of the operator near enough to be reached without changing position, except by bending down. This lever started or stopped the machine. The feed boards were not movable. On the side opposite the operator was a flat movable board or leaf, called a platen, upon which the blank paper was placed. When the wheels revolved this platen was forced against the type and the paper thereby received the impression; the platen then swung back towards the feed board. The method was for the operator to take a blank envelope with the right hand, place it on the platen, wait for the machine to make the impression, and then remove the printed envelope with the left hand, at the same time placing in another envelope with the right hand. On the platen there were ordinary guides (whether made of paper or some other material is not shown). These guides were to keep the envelopes in position so that the impression of the type would be in the proper place. The record does not disclose whether the power was steam or electric, but presumably it was the former.

On the day of the accident appellee was set to work, as heretofore stated, on one of the larger presses, which the testimony shows was being operated at a much greater rate

of speed then any she had previously worked on. The only testimony as to any instructions having been given her is that of the appellee, who testifies that there were none; that she noticed how the other girls started and stopped the presses; that she usually worked on the small press, and on the day in question was working on the small one from seven to eight in the morning, but that a little before eight she was set to work on the big press. She says, "He" (referring to the foreman) "told me that this was a rush order and not to waste any envelopes, and that I should get them out." She further testifies, that when she first went to work she was asked if she had ever run a machine, and she said, "No." On her cross-examination the appellee made a fuller statement of the way the accident happened, which was substantially as follows: From seven to nearly eight o'clock in the morning she was working on a small press, but at eight o'clock the foreman put her to work on the larger press, which was running faster than she had ever seen it run before. The foreman said to appellee when putting her to work that it was a rush order and not to waste any envelopes. The foreman then went away and appellee worked from five minutes of eight until nine o'clock printing envelopes right along, without any trouble whatever, and with the machine running at the same rate of speed during all the time. No employe of appellant spoke to her at all during the time. About nine o'clock appellee put one of the envelopes in the press for printing, and it in some manner dropped down inside of the machine. She did not know whether it "slid down" over the front edge of the platen or whether she put it in behind. She looked underneath the machine and saw the envelope in the curved part of the "J" shaped casting down near the axle or driving shaft, and without attempting to stop the machine reached in underneath to get the envelope. Her own language is about as follows:

"I was going to get my hand out and I couldn't get it out fast enough. I had reached in to get this envelope that was down in the machinery near the axle, and as it was down

in there I kept looking at the envelope to get it out and couldn't get it out. I kept trying to get the envelope out and the machine came right down and I couldn't get it out fast enough. The machine worked right back the way it had been working before and caught my hand * * * I knew that if I got my hand into the wheels and got caught it would be hurt. I could see that, that if I got my hand caught in the machinery it was going to be hurt."

While the appellee had been working on these printing presses for five weeks, it is quite apparent from her testimony that she did not know much about their construction or operation. She testifies that she did not know whether there was a treadle on the machine or not; that if there was one she had never used it. There was one on the press. From the picture offered in evidence it would appear that there was also a foot brake, the object of which apparently was to shut off the power, but she testifies that she did not know there was such a contrivance on the machine. She never looked in to see what the machinery looked like. She testifies that she never before had had envelopes drop into the machine in the way the one did which she tried to get out. On the other hand, the witness Polly Mehrforth states that she had seen appellee quite often before the accident reach in to get envelopes out.

While the knowledge that appellee received as to the dangers of her employment and as to the manner in which she was to do her work appears to have been gained from watching the other girls, it does not appear whether or not these other girls had been in the habit of taking out envelopes from the curved part of the "J" shaped casting near the axle or driving shaft. Nor does it appear whether it could have been done without being hazardous when the employe was working at a slow running press. However, it would seem to be much more hazardous with a fast running machine.

We are asked by the appellant to reverse the case on two grounds: first, that there was no evidence of negligence on the part of the appellant, and second, because of contributory negligence on the part of the appellee.

Many cases of this nature have been before the courts of this and other states, and the decisions are not by any means uniform. In Cooley on Torts, Section 652 *et seq.*, it is stated:

"The master may also be guilty of actionable negligence in exposing persons to perils in his service which, though open to observation, they, by reason of their youth or inexperience, do not fully understand and appreciate, and in consequence of which they are injured. Such cases occur most frequently in the employment of infants. It has been repeatedly held that the case of an infant is no exception to the general rule which exempts the master from responsibility for injuries arising from the hazards of the service. But while this is unquestionably true as a rule, it would be gross injustice, not to say absurdity, to apply in the case of infants the same tests of the master's culpable negligence which are applied in the case of persons of maturity and experience. It may be ordinary caution in one case to apprise the servant of the danger he must guard against, while in the case of another, not yet beyond the years of thoughtless childhood, it would be gross and most culpable, if not criminal, carelessness for the master to content himself with pointing out dangers which were not likely to be appreciated, or if appreciated, not likely to be kept with sufficient distinctness and caution in mind, and against which, therefore, effectual protections ought to be provided. The duty of the employer to take special precautions in such cases, has sometimes been very emphatically asserted by the courts."

In Coombs v. New Bedford Cordage Co., 102 Mass. 572, it was said:

"The notice which the defendants were bound to give the plaintiff of the nature of the risks incident to the service which he undertook must be such as to enable a person of his youth and inexperience in the business intelligently to appreciate the nature of the danger attending its performance. The question, indeed, on this branch of the case is not of due care on the part of the plaintiff, but whether the cause of the injury was one of which, by reason of his incapacity to

understand and appreciate its dangerous character, or the neglect of the defendants to take due precautions to effectually inform him thereof, the defendants were bound to indemnify him against the consequences. But in determining this question it is proper and necessary to take into consideration not only the plaintiff's youth and inexperience, but also the nature of the service which he was to perform, and the degree to which his attention, while at work, would need to be devoted to its performance. The obligation of the defendants would not necessarily be discharged by merely informing the boy that the employment itself, or a particular place or machine in the building or room in which he was set to work, was dangerous. Mere representation in advance that the service generally, or a particular thing connected with it, was dangerous, might give him no adequate notice or understanding of the kind and degree of the danger which would necessarily attend the actual performance of his work."

In Lynchburg Cotton Mills v. Stanley, 102 Va. 590, it is held:

"If it is to the interests of manufacturing establishments to employ infants of such tender years, with their immature judgment and lack of experience, not only the dictates of humanity, but public policy, demands that they should be held to the highest degree of responsibility for their care and protection. They must take knowledge of their childish disposition to play, and to play with fire, and of their inability to recognize danger, although open and obvious to those of riper years. They must instruct them as to the many dangers with which they are surrounded, and the way to avoid such dangers; and they must continue to repeat such instruction until they know the danger is fully understood and appreciated. And in view of the proneness of children to forget, they must from time to time renew these instructions, warnings and cautions."

The Supreme Court of Michigan held in Allen v. Jakel, 115 Mich. 484, as stated in the syllabus:

"In an action against the owner of a paper mill for in-

juries resulting to an inexperienced employe 14 years of age from having her hand caught between the rollers of a machine about which she was employed, it was a question for the jury whether the owner, in view of the plaintiff's youth and inexperience, was in duty bound to instruct her how to do her work, or was justified in leaving her to learn the proper method from observation and experience, inasmuch as it was obvious that her hand would be injured if it should get between the rollers."

In Norton et al. v. Volzke, 158 Ill. 402, it was held:

"The law requires of one of tender years only that degree of care which one of that age would ordinarily and reasonably use in the same situation and under like circumstances." And further that "Among the duties of a master that are nonassignable are the exercise of reasonable care as to the safety of tools, appliances and machinery and the place where a servant works, as well as the giving of information of special danger of the situation and of the machinery and appliances, where the servant is not informed."

In Chicago-Anderson Pressed Brick Co. v. Reinneiger, 140 Ill. 334, it is held:

"Employers owe it as a duty to inexperienced servants to point out the dangers of which they themselves have or ought to have knowledge, and to give such warnings as may lead to the avoidance of injury by the exercise of ordinary care. More especially is this so when the danger and the means of avoiding it are not apparent or fully within the comprehension of the servant. But the burden is upon the injured servant to prove the existence and breach of such duty. It is a general rule that when a contract of employment is made with a minor, he assumes the ordinary hazard of such employment in the same manner as an adult assumes them. But the rule is modified in case of young persons of inexperience and immature judgment, who are not capable of understanding and appreciating the perils to which they are exposed. They are entitled to recover for injuries which result from such perils, unless they have been instructed how to avoid them."

Appellant insists that the case from which the last quotation is made is not applicable because in that case the machine had a jerky motion different from other machines of the same manufacture, so that it would suddenly pull the mould and hand under the frame, and these things were not called to the boy's attention.

In the case before us the girl testified, and there was no other evidence on the subject, that she had never looked into the machinery and had never been told about it. She was evidently given no warning as to the danger of putting her hands in for the envelope, nor advised to stop her press before attempting such an act.

In the case of Hanson v. Ludlow Manfg. Co., 162 Mass. 187, the court had before it the case of a seventeen years old boy, who was sawing boxwood logs into blocks about one inch and a quarter thick. A log which he was manipulating by detaching a partially severed block with a hatchet was thrown suddenly forward, carrying his hand, which fell upon the saw, and he received the injuries complained of. The court, in sustaining a judgment against the employer, held that while the general danger of contact with a circular saw in operation is obvious, the particular danger arising from the liability of the saw suddenly and forcibly to so throw upward and forward objects which touch it in the rear that they may fall upon the front of the saw is an obscure danger, of which it is the duty of the master to give warning if he has reason to suppose that a servant set at work upon such a saw is ignorant of it; and in an action for personal injuries caused by such movement of the saw it may be a question for the jury whether the servant was so ignorant of this danger that the master ought to have warned him of it. See also Cobb Chocolate Co. v. Knudson, 207 Ill. 452.

Our attention is called by appellant to, and we have carefully examined, the cases of Swift & Co. v. Arndt in this court (not reported); Kolb v. Chicago Stamping Co., 33 Ill. App. 488, Jones v. Roberts, 57 Ill. App. 56; Ward v. Daniels, 114 Ill. App. 374; Hickey v. Taaffe, 105 N. Y. 26, all of which were cases of minors, and are of the opinion that the

case before us is distinguishable, by reason of the evidence in the case that the appellee had not been properly instructed as to the danger of doing what she did do, and her inexperience in working with the press running at the high rate of speed at which it was shown in the record to have been running.

We hold that no error was committed in submitting the case to the jury on the questions as to the negligence of the defendant and as to whether or not there was contributory negligence on the part of the plaintiff.

Objection is made on account of the refusal to give an instruction offered by appellant, which reads as follows:

"You are instructed that while the law permits the plaintiff to testify as a witness in her own behalf, still in considering her testimony you may take into consideration the fact that she is the plaintiff in this suit, and is interested in its results. If you believe from the evidence in this case that any witness has wilfully sworn falsely as to any material fact or matter at issue in the case, then you are instructed that you are at liberty to disregard the entire testimony of such witness except in so far, if at all, as it corroborated by other credible evidence, or by facts and circumstances shown on the trial."

This instruction is a proper one to be given where there is any dispute as to the facts in the case. The only reason assigned by the appellant why it should have been given in the case before us is that the appellee stated she did not remember whether she had ever worked in any other printing establishment. There was no evidence that she had ever worked in any other printing establishment. No witness was placed upon the stand by the defendant to contradict any of the testimony given by the appellee and the one witness whose testimony was introduced by her. We think that a refusal to give the instruction was not reversible error.

*Judgment affirmed.*

MR. PRESIDING JUSTICE SMITH dissents.