# CHARLESTON

NEIL ADMR. v. WEST VIRGINIA TIMBER COMPANY.

Submitted September 29, 1914. Decided January 19, 1915.

1. DEATH—*Declaration—Requisites.*

A declaration for wrongful death is fatally defective on demurrer, if it fails to aver plaintiff's appointment and qualification when suing as administrator. (p. 503).

2. MASTER AND SERVANT—*Injury to Servant—Declaration.*

In an action against the master for injury to his servant in the course of the employment, a declaration which fully avers the existence and negligent breach of the master's duty to provide safe and suitable machinery and appliances, together with facts or circumstances sufficient to impart to him notice of defects therein causing the injury, is not demurrable solely because of its failure expresssly to allege knowledge by the master of the defects.   (p. 504).

3. SAME—*Injury to Servant—Dangerous Machinery—Assumption of Risk—Question for Jury.*

Ordinarily, in an action for wrongful death, whether, by reason of capacity to know and understand the dangers incident to the operation of the machinery and the use of the appliances furnished by the master, a minor servant did in fact comprehend and appreciate such dangers and the means of avoiding injury therefrom, and therefore assumed the risk of such injury and absolved the master from the duty to instruct, are questions of fact for the jury under proper directions.   (p. 505).

4. TRIAL—*Harmless Error—Instructions.*

An instruction, though its terms be doubtful, ambiguous and alternative, will not warrant reversal if, when read with other instructions properly stating legal principles applicable to the same subject, it is fairly apparent the jury was not misled thereby.   (p. 508).

Error to Circuit Court, Nicholas County.

Action by James G. Neil, administrator, etc., against the West Virginia Timber Company.   Judgment for plaintiff, and defendant brings error.

*Reversed, and new trial awarded on limited issue.*

*Brown, Jackson & Knight* and *Angus W. McDonald,* for plaintiff in error.

LYNCH, JUDGE:

For the reversal of a judgment obtained against it in an action by plaintiff for injuries inflicted upon his son, aged 19 years, while in its service, and from the effect of which he died, defendant assigns as erroneous rulings upon its demurrer to the declaration, upon instructions, and the admission of evidence offered by plaintiff.

Under the decisions in *Austin* v. *Callaway,* 80 S. E. 361, and *Perry* v. *Coal Co.,* 81 S. E. 844, the declaration is de-

fective because of its failure to aver the appointment and qualification of plaintiff as personal representative; a defect to be solved pursuant to our holdings in *Moss* v. *Railway Co.*, decided October 3, 1914, and *Crockett* v. *Coal & Coke Co.*, decided December 15, 1914, neither being as yet reported.

The other defect assigned was failure to allege, in the second count, defendant's knowledge of the defect in the machinery and the appliances for its operation. After averring the relation of master and servant, the assignment to plaintiff's intestate as and for his specific employment the operation and control of a ripsaw, and the master's duty to use reasonable care to provide safe and suitable machinery and appliances therefor, the declaration, by way of breach, alleged, in the first count, defendant's negligence in failing and refusing to furnish decedent a safe place and safe appliances in and with which to work. More specifically stated, the breach assigned was the failure and refusal to provide a "belt tightener" to control the gum belt which, by means of pulleys, one on the pulley shaft below, the other on the machine operated by him, furnished the motive power for the saw, and in providing in lieu thereof "sticks" with which to throw the belt from the lower pulley in order to stop the machine and disengage the saw for the purpose of sharpening it. The second count, after averring the same relation and assignment of work and duties, charged defendant with negligence in that it failed and refused to repair the belt tightener, but permitted it to remain unrepaired, and in lieu thereof failed to provide safe and suitable appliances, and negligently provided unsuitable, dangerous and unguarded machinery and appliances, and failed to post notices of the danger incident to the operation and use thereof. And it was averred that, by reason of such negligent omissions in the observance of the respective duties alleged in the two counts, and while engaged in an attempt to throw the belt from the lower pulley, and without fault on his part, decedent received the injury which resulted in his death.

Where from the declaration appears, as we think it does here, the duties by breach of which the servant sustained the injury sued for, or where the defects assigned are sufficiently obvious to impart notice to the master, the declaration will

not be deemed demurrable solely because it fails expressly to aver defendant's knowledge of the defect. In *Hoffman* v. *Dickinson*, 31 W. Va. 142, this court has said that if the declaration properly charges the master with negligence, although it does not allege knowledge in him of the defect in machinery or appliances, or that he ought to have known thereof, it is sufficient. While the decisions are not uniform, the rule stated in the case cited is supported by the authorities collated in 4 Labatt M. & S. 4958. Where the complaint sets out the master's duty and its nonfulfillment, it is to be regarded as including by implication an allegation that he knew his obligation to his servant and his own failure to do what was incumbent upon him by reason thereof. 4 *Id.* 4960; *Linquist* v. *Stewart*, 248 Ill. 491.

No one witnessed the occurrence; and, because of the serious and painful character of the injury, deceased was unable to explain and did not explain how it was inflicted. Succinctly stated, the evidence shows that on leaving the machine he picked up a stick about four feet in length, three-cornered in shape at one end, and carried it with him to the room below, no doubt for the purpose of throwing the belt from the lower pulley; that within the usual time thereafter the belt transmitting the motive power was released and the machine stopped; and that, a few minutes later, he reappeared at the head of the steps, obviously suffering from some serious injury inflicted upon him in the meantime; and upon examination the surgeon called to his assistance found a wound on the abdomen apparently caused, as he testified, by a violent blow from a three-cornered instrument of some character or description.

Though engaged in the service of the company from four and a half to six months, the witnesses not agreeing any more definitely as to the time, part of it as "off-bearer" to the operator of the same saw, and, when not otherwise engaged, occasionally and skillfully operating it himself and throwing the belt from the pulley, deceased only two days prior to the injury, at the joint request of himself and his sister's husband, was given charge and control of the operation of the saw and attendant machinery and appliances; and, although the assignment carried with it the duty of throwing the belt

when necessary, decedent was set to work without any direction or information as to the dangers involved, or as to the best and safest method of avoiding injury in the use of the appliances, except the knowledge acquired by him during the brief period of employment at defendant's factory.

Frankly defendant admitted failure on its part to warn or instruct, but sought to show and now contends that decedent's intelligence, skill and capacity made unnecessary any attempt so to do. That decedent was more than ordinarily intelligent, skillful and competent, clearly appears from the proof introduced by defendant and not controverted by plaintiff. Indeed, it may be said he had unusual capacity for one of his age. But the employment to which he was assigned and the instrumentalities with which he was required to work may properly be deemed dangerous, though to deceased, a young man nineteen years of age, perhaps not obviously so. He may not have considered them vitally or inherently dangerous. However, conceding the hazardous character of the employment and of the instrumentalities he was required to use, still, under the authorities, it was for the jury, under proper instruction, to say whether he fully comprehended the dangers attendant upon the due and proper use of the machinery and appliances, even if, as defendant contends, it did in fact provide suitable appliances for releasing belts from the pulley; and also whether, understanding the danger, he knew or ought to have known, or had capacity to know, the best and safest method or means of avoiding the attendant perils and hazards, or that the stick used by him in throwing the belt was essentially more dangerous or unsafe than the longer ones so furnished, conceding those furnished by defendant were then in the place provided for them. Besides, it does not appear deceased knew or was informed that such instrumentalities had been provided, or, if provided, that he must use them exclusively and therefore not others specially improvised by him. Again, defendant's foreman, knowing, as he admits, that deceased picked up the shorter stick and went down the steps carrying it, presumably for the purpose of throwing the belt from the pulley, ought then to have warned deceased not to use it as a means to that end. The foreman, however, said he thought deceased intended to leave the build-

ing for an entirely different purpose, though he saw him start down the steps with the stick in hand.

Viewed in the light of the circumstances proved and of the authorities later cited, we can not say, as a matter of law, that the instructions on this phase of the inquiry either misled the jury, or were so plainly improper as to warrant award of a new trial, although they were not as appropriate to the facts involved as they ought to have been. They did, however, fairly present the law applicable to the facts of the case.

In effect, number two told the jury that if, taking into consideration decedent's age, capacity and experience, they believe "he may have been guilty of an act or acts which in an adult may have amounted to an assumption of the risk of injury and a waiver of the duty the master owed him, yet he can not be held to have assumed any such risk or waived any such duty which one of his age, discretion and experience could not fully comprehend, and appreciate"; and number three, that, although as a general rule the servant assumes the risk incidental to the employment, and if injured can not recover damages for injuries inflicted while so engaged, this does not relieve the master from the duty to warn the employee of danger and instruct him how to avoid it if from the evidence they believe deceased "through youth, inexperience or lack of ability was incompetent to understand fully and appreciate the nature and extent of the danger" incident to the work.

As apropos and illustrative of our meaning, and based on facts somewhat similar, *Lehto* v. *Mining Co.*, 152 Mich. 412, says: "Where a boy of unusual intelligence was injured while attempting, within the scope of his employment, to shift a belt in the manner in which he claims he had been accustomed to do and had seen others, including his foreman, do, without instructions to the contrary, the question whether without instruction or warning he appreciated and so assumed the risk is not a question of law, but of fact, requiring submission to the jury." *Laundry* v. *Schuster*, 159 S. W. (Tex.) 447; *Crowl* v. *Linseed Co.*, 164 S. W. (Mo.) 618; *Glaich* v. *Hogan*, 162 Ill. App. 261; *Betts Co.* v. *Hancock*, 139 Ga. 198; *Booth* v. *Stokes*, 241 Pa. 349; *Belevicze* v. *Platt*, 84 Conn.

632; *Railway Co.* v. *Mauck,* 152 Ky. 498; *Kuphal* v. *Flouring Co.,* 114 Pac. (Mont.) 122; *Noden* v. *Verlenden Bros.,* 211 Pa. 367, note 3 Ann. Cas. 368; note to *Cronin* v. *Columbia Co.,* 29 L. R. A. N. S. 111; *Ewing* v. *Lanark Fuel Co.,* 65 W. Va. 726; 3 Labatt M. & S. §1155.

Defendant assails plaintiff's instruction number five, and cites *Whorley* v. *Lumber Co.,* 70 W. Va. 122, in support of the criticism urged against it. Though in part correctly defining the master's duty as to place and appliances in and with which he sets his servant to work, it is nevertheless amenable to criticism, chiefly because of its ambiguity and uncertainty.

But defendant requested, and the court gave, other instructions on the same subject, clearly and accurately defining the duty required of the master as to place, machinery and appliances. Thereby the law of the case was correctly propounded to the jury, and defendant waived its right to rely on any defective statements contained in plaintiff's instruction. The instructions so proposed and given were defendant's eleven and thirteen. They in part reaffirmed the principles intended by number five given at plaintiff's request, and eliminated its objectionable features, its uncertainty, ambiguity and alternativeness. In effect, number thirteen correctly advised the jury that, while the master's duty required it to provide a suitable place and appliances in and with which the servant may perform the labor assigned to him, the master is not bound to provide the safest and best machinery and appliances for that purpose, and that if those so furnished are in common use and "are such as can with reasonable care be used without unnecessary danger to the employee it is all that can be required of the employer". Substantially, this instruction is based on the first point of the syllabus in *Giebell* v. *Collins Co.,* 54 W. Va. 518. Instruction eleven told the jury that defendant was not bound to furnish safe and sound instrumentalities for decedent's use, saying all that could legally be required of it was the use of ordinary care and diligence to provide reasonably safe and suitable machinery and appliances.

These instructions, when read with plaintiff's five criticised, clearly and fully presented the duty legally devolving upon

the master as to the degree of diligence and care required in furnishing reasonably safe machinery and appliances. So read, the uncertainty, ambiguity and indefiniteness of number five was eliminated. It was not erroneous, except in those particulars. Nor was it inconsistent with defendant's instructions. They related to the same duty. The chief objection noted in the Whorley case, where the same instruction was given, was that it presented the duty of the master in the alternative, and, therefore, as stated by Judge BRANNON, left the jury to determine which alternative should control. Other instructions, however, permit no such doubt. They remove all doubt as to the proper application to the facts proved on the trial. Under these circumstances, to hold that a misdirection resulted, manifestly would be unreasonable, because grossly technical. Instructions must be read as a whole; and if, when so read, it is apparent they could not have misled the jury, the verdict will not be disturbed, though one or more of them may have defectively stated the principles intended to be announced for the jury's guidance. *State* v. *Waldron,* 71 W. Va. 1, 11; *Railway Co.* v. *Quayle,* 95 Va. 741; *Burton* v. *Seifert,* 108 Va. 338; *Adamson* v. *Railroad Co.,* 111 Va. 556; *Marbury* v. *Jones,* 112 Va. 389, 397; *Coal Co.* v. *Liddil,* 94 N. E. (Ind.) 411. So, in *Stewart* v. *Parr,* 82 S. E. 259, we said: "An instruction based on, but inadequately stating, correct legal principles will not be deemed prejudicial, if when read with others it is apparent the jury was not misled thereby." See also *Runnion* v. *Morrison,* 71 W. Va. 354, 260; *Lay* v. *Coal & Coke Co.,* 64 W. Va. 288, 295.

As defendant's foreman on cross-examination denied certain statements attributed to him, though made, if at all, on the day of decedent's burial, three days after the accident, plaintiff was not improperly recalled and in rebuttal permitted to state whether the foreman did make to him or in his presence the statements so denied as to what he did or said immediately after deceased was injured.

As elsewhere observed, the declaration was demurrable because of its failure to aver plaintiff's appointment and qualification as personal representative of decedent, necessitating reversal of the judgment for the purpose of supplying the necessary averment, with direction to permit such amendment

and when made to try the issue raised by defendant thereon if any, and if upon the trial thereof a verdict be found for plaintiff, or if there be no such issue, to enter judgment on the general verdict, and to set aside the general verdict should the issue on the amendment be resolved in favor of defendant.

*Reversed, and new trial awarded on limited issue.*