# CHARLESTON.

### F. M. CANFIELD v. ALMIRA COLLINS et al.

Submitted January 21, 1919.    Decided January 28, 1919.

BOUNDARIES—*Establishment—Grant.*

> An owner of two adjoining tracts of land having a common line may sell and convey any part of one or both tracts and fix the boundary therefor as he may elect, and if the calls in the deed, promptly recorded, locate the common boundary between the tract sold and that retained on a line slightly different from the old one, the line so fixed will prevail over the calls of a subsequent recorded deed conveying the tract so retained, though it purport to fix the common boundary line as formerly located.

Error to Circuit Court, Gilmer County.

Ejectment by F. M. Canfield against Almira Collins and husband. Judgment for plaintiff, and defendants bring error.                    *Reversed and remanded for retrial.*

*R. F. Kidd* and *L. H. Barnett,* for plaintiffs in error.

*A. L. Holt* and *Linn & Craddock,* for defendant in error.

LYNCH, JUDGE:

Frank M. Canfield brought ejectment to recover possession of a small triangular parcel of ground, containing about one acre, along the line common to a 69-acre tract owned by him and a 136.5-acre tract owned by the defendant Almira Collins, and secured the judgment of which she and her co-defendant husband complain; they assigning as erroneous the giving of plaintiff's instruction number 2 and the refusal of their instruction bearing the same number.

To understand fully their relevancy and applicability, or the lack of either, to the issues involved, a brief summary of the facts proved or admitted is necessary. Almira Collins acquired title to the 136.5 acres June 17, 1904, directly through Thursey M. Lynch, who was a daughter of Currence B. Conrad and intermarried with Charles Thompson, a son of Hugh Thompson, whom she survived, and afterwards with Vanlinden S. Lynch who joined with her in the Collins deed, recorded November 10, 1904; and Canfield, title to the 69 acres through two conveyances, one by Thursey M. Lynch and V. S. Lynch to N. E. Wiant, dated August 21, and recorded October 20, 1913, the other by Wiant to Canfield May 4, 1914, recorded June 4 of that year. The 69-acre tract is sometimes referred to in the record as containing 60 acres, but which, it is agreed, contained the larger area, two acres of which located somewhere near the common line were reserved in the Wiant deed, so that Canfield acquired and now owns only 67 acres of the 69-acre tract.

Although in the deed to Wiant other grantors joined with Thursey M. and V. S. Lynch, they did not do so because of any real interest possessed by them in the land granted, but merely in recognition of the right of the grantors named to dispose of the property and to avoid any question affecting the title thereto; and the case was argued and submitted as if Thursey M. Lynch was the immediate and unquestioned source of the title to both tracts.

Besides the division line, there are two and only two corners common to both tracts, one a rock whose location and identity are established, the other a stake not definitely identified or located. The two surveyors, of whom the court ap-

pointed one either upon its own motion or by and with the consent of the parties, the other selected by the plaintiff and to some extent acting under his guidance and direction, did not agree upon the location of the second corner and found nothing by which they were able to identify it confidently. They did find some marked trees at the end of the line or along it and some portions of an old fence, but the marks were not well defined or reliable, as the testimony seems clearly to indicate. Beall, whom plaintiff selected, ran from the rock on a course N. 38 E., and Lewis, whom the court appointed, on a course N. 39 E., the distance specified in the deed to the next corner. That corner each of them attempted to locate at the northeast end of the lines so run by them. This difference in degree resulted from Beall's adopting the course found in the decrees partitioning the lands of Hugh Thompson out of which were carved in 1868 the two tracts of land now severally owned by the parties to this action, that course being N.. 35 E., or S. 35 W.; and, as corrected for variations, made the call as run by him. Lewis, however, took as the proper course that which he found in deeds made in 1902 and 1904 by Thursey M. Lynch, then the owner of both tracts, and her husband, one to R. C. Kerens conveying the coal under the 136.5 acres, the other to Mrs. Collins conveying the surface of the same tract, that course being S. 38.30 W., and adding half a degree for variatioin ran the line on this course as corrected.

The only reason or excuse for going back to the partition decrees is that both tracts were parts or parcels of the Thompson tract, the first being assigned to William L. Thompson who conveyed it to Thursey M. Thompson, now Thursey M. Lynch, and she to Mrs. Collins. Thursey E. Lynch also acquired the 69 acres as the devisee of her father, Currence B. Conrad, that tract now being owned by the plaintiff, her remote grantee, less two acres which she reserved.

The instruction of which the defendants complain told the jury "that if they believe from the evidence that the rock corner planted and agreed to, and as shown as the beginning corner of the disputed line on the map identified and filed in

evidence by J. Ernest Beall, surveyor, as an original corner, and that the corner at the other end of the disputed line is not found, then the course and distance called for in the original partition of Hugh Thompson's estate shall govern.'' This instruction ignores an essential element of the defense interposed on behalf of the defendant and certainly supported by the following facts and circumstances revealed upon the trial and clearly appearing upon the record and not controverted.

As we have said, Thursey M. Lynch was the source through which the parties acquired title. The coal underlying the surface of the 136.5 acres she sold in 1902 to Richard Kerens, Trustee, and preliminarily to the execution of the deed May 30, 1902, the tract was surveyed, and the survey so made and the deed executed pursuant thereto recognized and adopted as the true division line of the two tracts and as the correct or corrected course of the line in dispute, the call S. 38.30 W. 149.5 poles, or the reverse thereof N. 38.30 E. Mrs. Lynch also conveyed to Mrs. Collins the surface of the 136.5 acres June 17, 1904 by the calls of the Kerens coal deed; and, in the absence of anything appearing to the contrary, the rational, reasonable and legal presumption is that as such grantee she entered into the immediate and actual possession of the land conveyed and every part of it even to the full limit as described by the calls of the deed, a possession not disturbed or molested thenceforward to the date of the service of the declaration upon the defendant September 17, 1914, a period of more than ten years. She also endeavored to inclose the land by a fence along the common line soon after the date of her deed, and as plaintiff admits has held and now holds possession to the inclosure.

Whether by inadvertence or not, in the deed for the 69-acre tract made by Mrs. Lynch, her husband and others to Wiant, plaintiff's grantor, August 21, 1913, more than nine years afterwards, the call for the controverted line was the same as that adopted in the decrees in the Thompson partition suit instead of the call in the deed to Mrs. Collins. But the apparently complete and undisturbed possession of the defendant to the limits of the boundaries fixed by the call

of her deed cannot be ignored, as it was ignored in the in· struction of which she complains.

It is hardly necessary, because axiomatic, to say that while Thursey M. Lynch owned both tracts and before she had conveyed either of them, her control over them was complete, her dominion absolute, and she could dispose of them in whole or in part as she might elect,· and if she elected to sell part of either or both and retain the residue, she had ample and unquestionable authority to do so, and could convey by any course or call she might approve or her judgment dictate without regard to any previously established. division line between them. In the exercise of her proprietary rights she could convey to the same grantee the land on either side of the common line thereby entirely obliterating it, and if she had done so she could not, nor could any subsequent vendee of hers, complain or set up a title hostile to that voluntarily conferred upon the former grantee by a prior recorded deed; this upon the maxim that priority in time gives priority of right. *Stewart* v. *Parr*, 74 W. Va. 327, 334.

This would be the inevitable result even if the intention of Mrs. Collins' grantors was to conform to the calls of the partition decrees, as perhaps it was, since the divergence is only three and one-half degrees, and this chiefly because of magnetic variation. The rights of the parties are to be judged by the prior deed as it is while it remains unmodified and uncorrected, and not by what the subsequent grantee of the adjoining tract may conceive his rights to be notwithstanding the prior grant and recordation. If the grantors chose to alter the 35-degree line or give it any other direction, as they did by making it S. 38.30 W., that was a matter that concerned them and no one else. It was this latter course, run apparently in 1902, that Lewis adopted as the basis of his survey, and, allowing half a degree variation, ran it as S. 39 W., while Beall adopted the old or partition call of 1868, repeated in the deeds of 1913 and 1914 under which plaintiff holds title, and added three degrees making the course S. 38 W. As Mrs. Collins, the defendant, was the prior grantee of the common grantor, the course as

given in the deed to her in 1904 is accorded priority over a different subsequent call.

To the extent any of the instructions propounded by plaintiff and given, and especially instruction No. 2, ignored or disregarded the legal principles stated, they were erroneous and prejudicial and ought not to have been given. For virtually the same reason defendant's instruction should have been given. And as they were apparently vital to the issue tried by the jury, the ruling thereon requires a reversal of the judgment and the remand of the case for retrial.

*Reversed and remanded for retrial.*