# CHARLESTON

STEWART *et al.* v. PARR *et al.*

Submitted February 17, 1914.   Decided May 12, 1914.

1.  INFANTS—*Actions Against—Guardian Ad Litem.*

Where infants are defendants in ejectment, as properly they may be, the court should, as in this case it did, on plaintiff's motion, appoint a guardian *ad litem*, by whom they may appear and defend. But such appointee may, but need not necessarily, be the legal guardian.   Nor is it essential he should be named as defendant therein.   (p. 328).

2.  TRIAL—*Instructions—Error—Cure by Other Instructions.*

An instruction, based on, but inadequately stating, correct legal principles, will not be deemed prejudicial, if, when read with others, it is apparent the jury was not misled thereby.   (p. 329).

3.  BOUNDARIES—*Instructions.*

An instruction, by which the jury was informed that, "in ascertaining the true boundaries of a tract of land described in a grant or deed, course and distance yield to marked trees and other permanent monuments identifying corners and lines", while not universally true, is nevertheless appropriate where the identity of some of the corners and monuments is admitted or clearly established by proof, though the identity and location of other lines and monuments is in fact in issue, as to which the evidence is voluminous and conflicting.   (p. 332).

4.  APPEAL AND ERROR—*Review—Conflicting Evidence.*

Where the issues properly submitted to a jury are solely questions of fact, to be determined from competent though conflicting evidence, its verdict will not be disturbed, unless the evidence is palpably insufficient to sustain it.   (p. 334).

Error to Circuit Court, Doddridge County.

Action by Sarah E. Stewart and others against C. S. Parr and others.   Judgment for plaintiffs, and defendants bring tiffs in error.

*Affirmed.*

*J. Ramsey, G. W. Farr* and *Geo. M. Hoffheimer,* for plaintiffs in error.

*Jackson V. Blair,* for defendants in error.

LYNCH, JUDGE:

Plaintiffs recovered, in ejectment, the verdict and judgment of which defendants now complain. The facts sufficiently appear in the discussion of the specific assignments of error, which involve rejection of special pleas, certain rulings on evidence and instructions, and refusal to grant a new trial.

The special pleas tendered by defendants aver the infancy of defendants Cleveland and Grace Snider, and the nonjoinder of C. S. Parr as their guardian. These the court refused, and to its ruling defendants excepted on the record. Whether the pleas thus tendered and rejected should have been made parts of the record by bill of exceptions, we need not determine. The only issue thus sought to be raised was based on the theory that plaintiffs should have named as defendant the guardian and not the infants represented by him, or, if not him alone, then him and the infants jointly.

Because § 5, ch. 90, Code 1913, requires the occupant to be named as defendant in ejectment, and as under § 7, ch. 82, the guardian holds possession for his wards, it argued he is therefore the real occupant. But, by the first section cited, any person exercising acts of ownership over or claiming title to or interest in the land at the commencement of the action, whether then occupying it or not, "may also be named a defendant in the declaration". As the declaration avers defendants entered into and unlawfully withhold from plaintiffs possession of the premises, we are unable to perceive in what respect defendants are prejudiced by the court's refusal to permit the filing of the special pleas, even if otherwise proper.

Infants may be sued in ejectment, as well as adults, whether in possession or not, if they exercise acts of ownership over the land or claim title thereto or an interest therein. However, if they are thus sued, whether jointly with others or by themselves alone, it is incumbent upon the plaintiff to move at the proper time the appointment of a guardian *ad litem,* by whom they may appear, plead and defend. *Campbell* v. *Hughes,* 12 W. Va. 183; *Cole* v. *Pennell,* 2 Rand. 174; *Alexander* v. *Davis,* 42 W. Va. 465. With this requirement plaintiffs promptly and fully complied. Nor was it essential that

the legal guardian should be appointed as the *ad litem* guardian. So that in neither ruling did the court err. Infants are as much the wards of the court, and entitled to the same degree of care, in actions of ejectment, as in other proceedings touching their property or property rights.

Defendants complain of the admission, over their objection, of certain parts of the testimony of Martin, the surveyor, T. J. Snider, C. S. Parr and R. T. Lowndes, and of the introduction of the Sherwood plat. But, as the rulings thereon were not brought to the attention of this court by bills of exception, no duty devolves on us to consider the propriety thereof, under the holdings in *Halstead* v. *Horton,* 38 W. Va. 727; *Gregory* v. *Railroad Co.,* 37 W. Va. 606; *State* v. *Henaghan,* 73 W. Va. 706, 81 S. E. 539.

Of the bills of exception, the first makes the evidence as a whole part of the record, the second the instructions, the third and last the overruling of the motion for a new trial.

Considering the instructions complained of by defendants, we find that by number one "the court instructs the jury that, in ascertaining the boundaries of a tract of land described in a grant or deed, course and distance yield to marked trees and other permanent monuments identifying corners and lines". While admitting the correctness of the proposition announced when fully warranted by the facts proved, defendants urge lack of applicability to the facts of this case. They claim the rule thereby asserted is not universal, absolute and inexorable, and that it was therefore error to give the instruction, because even the identity of the monuments was uncertain and contested.

Of course, there is no rule of identification universally applicable to the facts of all controversies affecting the subject matter in litigation in any particular form of action. This difficulty appears in *Teass* v. *St. Albans,* 38 W. Va. 1, wherein "some of the rules resorted to" in the location of lands are said to be "(1) natural boundaries; (2) artificial marks; (3) adjacent boundaries; (4) course and distance— course controlling distance, or distance course, according to the circumstances. Neither rule, however, occupies an inflexible position; for when it is plain there is a mistake, an inferior means of location may control a higher". There-

fore, whether the instruction was warranted depends on the facts upon which it was predicated.

Both parties derive title through Franklin Maxwell. He was the common source. That is admitted. In 1867 he acquired from T. W. McKinley 500 acres of land, in the deed bounded and described as "beginning at a large stone with a dogwood and black oak pointers, thence N 45 E 320 poles to a stake standing S 80 W 25 feet from a large poplar marked as a pointer; thence S 45 E 250 poles; thence S 45 W 320 poles; thence N 45 W 250 poles to the beginning".

In 1875 Maxwell conveyed to R. T. Lowndes 538 acres adjoining the McKinley tract on the south and west. The true location of two calls in the Lowndes deed determines the controversy, namely, from a chestnut "S 45 E 28 poles to a rock, black oak and dogwood, McKinley corner, thence with a line of same N 45 E 197 poles to a small beech". Out of the 538 acres Lowndes in 1898 conveyed to E. J. Stewart 193 acres, adjoining the McKinley 500 acres on the south and west, the description of the two disputed lines being the same in the deed to Lowndes and his deed to Stewart. The deed to Stewart was made pursuant to a title bond dated in 1875, the contents of which do not appear.

After his deed to Lowndes, Franklin Maxwell, in 1880, by an agreement not in the record, sold to T. J. Snider 110 acres adjoining the 193 acres on the south and east. Maxwell having died, his widow and heirs executed the conveyance to Snider in 1893, and therein gave the two disputed calls as S 50 W to "a black oak, S 45 W 28 poles to a chestnut"; and Snider, in 1897, by the same calls, conveyed the same tract to Parr.

Aside from the question of adverse possession, a question solely for the jury because as to it the evidence is conflicting, the true location of the southwest McKinley corner at the rock called for in the deeds to Lowndes and Stewart is decisive of the present controversy. For all the parties agree and rely upon the existence and established location of both the chestnut and the beech. But defendants attempt to establish the McKinley corner at a point 15 poles west from the large rock which plaintiffs insist is the corner called for in their chain of title. The evidence as to the true location of the two dis-

puted lines, from the chestnut to the McKinley corner and
thence to the beech, is voluminous, and in part contradictory.

Pursuant to order of survey, Martin ran the exterior bounds
of the McKinley tract. He located its corners, substantially
in accord with the calls in the deed to Maxwell. Along all
the lines he found marked trees and pointers. Not only did
he locate, for the southwest corner, the rock as claimed by
plaintiffs, but also the northwest corner near the poplar, and
the beech in the line between them. While he regarded the
established monuments found as controlling, on the whole
the courses and distances on his plat are not materially var-
iant from those in the conveyances under which plaintiffs
claim title. The disputed call, N 45 E 320 poles from the rock
to the stake, he ran as N 48 E 321 poles, locating with reason-
able certainty both the exterior monuments specified. With
and assisting him, at the instance of defendants, was their
witness Freeman, an experienced surveyor, who states that
the Martin plat, followed by the verdict, defined reasonably
well the McKinley survey. Freeman practically admits that
the large rock then located as the southwest corner corre-
sponded with the monument called for in the Lowndes deed,
and was the only rock near thereto answering that descrip-
tion, and consequently that a line therefrom past the beech
to the point designated by Martin as the opposite corner would
represent truly the northwest line of the McKinley tract.

Confirming the accuracy of the Martin survey, plaintiffs J.
L. and L. C. Stewart describe the McKinley corner at the
rock, with the dogwood and black oak pointers, and say both
their father and Franklin Maxwell in their lifetime treated
it as the true location. They and Lowndes testify that, when
E. J. Stewart purchased the 193 acre tract in 1875, it was
carefully surveyed by Daniel Sherwood, who then identified
the rock as the corner, and the beech as well as other marked
trees along the line therefrom to the opposite corner near
the poplar; and the plat then made by him is introduced in
support of their testimony. It was pursuant to this survey
that the Lowndes deed was made. It is also shown that still
another survey of the disputed line was made by Cortland
Sperry in 1876, for defendant's predecessors in title, and
that Sperry also fixed the rock as the McKinley corner.

For defendants, it is shown that in 1892, before the deed to Snider, William Maxwell surveyed for him the 110 acres. In doing so, he ran from the beech to a black oak root as the McKinley corner, where there were "dogwood and gum pointers", since gone, and thence to the chestnut. There was no rock at the black oak root. The courses and distances of the survey are not given. Nor does it appear that the deed to Snider was made in accordance therewith. It does appear that Stewart then objected to the lines so run, and refused to be bound by them. It is further shown that Freeman, in a survey made for Stewart in 1898, located the same point as had Maxwell for the disputed corner. The line from the beech to the black oak root appears on the Martin plat as S 51 W 200 poles, and from the beech to the rock S 48 W 200 poles, the call in the Lowndes deed being S 45 W 197 poles. In addition to these surveys, defendants C. S. Parr and Cleveland Snider state as a conclusion, without detailing facts in its support, that the true McKinley corner is located at the black oak root.

From this analysis of the testimony touching the location of lines and corners, we can not say instruction number 1 was improper, especially under the authority of *State* v. *King*, 64 W. Va. 546, wherein this court held that "mere conflict in the evidence as to identity of monuments does not preclude the application of the rule" that "quantity, courses and distances mentioned in the description of land must yield to identified monuments where there is a conflict", " it being the duty of the court or jury, as the case may be, to determine from the evidence whether the objects in question are the monuments called for". To the same effect is the holding in *Lewis* v. *Yates*, 62 W. Va. 575, wherein the court said: "In locating land from the description in a deed or patent, natural monuments and marked lines must be allowed ordinarily to control courses and distances, if there is a conflict; but, in such case, the evidence must be sufficient to identify with reasonable certainty the monuments in question as the monuments called for in the description". As in *Teass* v. *St. Albans, supra,* so in *Matheny* v. *Allen,* 63 W. Va. 443, it is held that as "a general rule in locating boundaries of land resort is to be had first to natural landmarks, next to artificial mon-

uments, then to adjacent boundaries, and last to courses and distances''. See also *Wiley* v. *Hatcher*, 70 W. Va. 92; *Lyons* v. *Real Estate Co.*, 71 W. Va. 754.

It is true, as defendants contend, the exact location of a corner common to both tracts was an issue to be determined by the jury; an issue as to which, we have already said, the evidence conflicted. But, as also stated, there were corners as to the proper location of which there was no controversy. The effect of the instruction, therefore, was to advise the jury that, in an effort to ascertain the location of the disputed corner and line, established monuments, natural or artificial, control other calls in a deed in case of a conflict. As thus understood, the court did not err in giving the instruction; especially when it gave for defendants other instructions to the effect that if the jury found the true corner to be at the black oak root, indicated by J on the plat, its verdict should be for defendants.

Defendants rely for reversal on plaintiffs' instruction number 7, whereby the jury is directed to find for plaintiffs if they believe from the evidence that the ''rock'', at D on the Martin plat, is the true McKinley corner, and is the same rock corner called for in the deed from Lowndes to Stewart for the 193 acres, unless they further find defendants and those under whom they claim have been in adverse possession of the disputed strip for ten years prior to institution of the action. They find vice in it, because, as they contend, if the corner is located as found by Martin, it does not follow as a matter of course that plaintiffs are entitled to recover all the land in dispute. In the deeds from Maxwell to Lowndes and Snider, there are three lines and four corners common to the two tracts thus conveyed, one owned by plaintiffs, the other by defendants. The calls in plaintiffs' chain of title from the beech, the beginning corner in the Lowndes deed, are S 45 W to ''a rock, black oak and dogwood, McKinley corner'', thence S 45 W 28 poles to a chestnut, thence N 57 W 21 poles to a chestnut oak on the ridge. Those in defendants' chain of title are S 50 W to ''a black oak'', which by its verdict the jury in effect located at D and not at J on the map as the corner at the ''rock, black oak and dogwood'', thence S 45 W 28 poles to a chestnut, N 57 W 20½ poles to a chestnut

oak; the only change in the calls being from S 45 W to S 50 W—a difference doubtless resulting from inadvertence or magnetic variation; for it is apparent that both tracts have in common the line of the McKinley-Maxwell 500 acre survey to the rock, dogwood and black oak, and the two lines therefrom to the chestnut and chestnut oak. Therefore, if the true McKinley corner is at D on the Martin plat, the instruction is not amenable to the criticism urged by defendants.

Finally, defendants vigorously assail plaintiffs' instruction number 2. While prolix, and, when considered alone, of doubtful propriety, we are of opinion that it did not, when read with defendants' instructions 6, 11, 18 and 21, tend to prejudice the defendants. Properly analyzed, it advised the jury that if they found plaintiffs and defendants traced title to a common grantor, a fact admitted, then the deed by which he first divested himself of title to the land in controversy confers the superior title; that, if "plaintiffs' title to the land in controversy relates back to and connects up with that superior title", their title is superior to that of defendants; and that, if plaintiffs' ancestor "entered upon the land described in the declaration under his purchase" from his vendor, the presumption is he held to the extent of the boundaries stated in the deed, but that this presumption may be rebutted by evidence of actual adverse possession of the land in controversy. Defendants argue that by this instruction the court virtually settled the principal question submitted to the jury—whether the land in controversy was in fact the land owned by plaintiffs. But instructions are always to be read as a whole; and defendants' instructions plainly told the jury not to find for plaintiffs unless they believed from the evidence the land in dispute was embraced within the different conveyances in their chain of title.

An examination leads us to the conclusion that the instructions requested by defendants and refused by the court were, when viewed in the light of the evidence, either improper because erroneous, or sufficiently covered by those asked and given.

As in our opinion the evidence, though conflicting, was suf-

ficient to warrant the verdict, the court did not err in refusing the motion for a new trial.

Finding no error, we affirm the judgment.

*Affirmed.*