# CHARLESTON.

### C. M. FOUTTY v. CHALMAX SALES COMPANY.

Submitted October 3, 1923.    Decided October 9, 1923.

SALES—Measure of Damages for Breach of Warranty of Quality
of Personalty Difference Between Price Paid and Value.

In an action for damages by the purchaser of personal property for breach of warranty of quality, the measure of recovery is the difference between the price paid and the value of the article at the time of delivery.

Error to Circuit Court, Doddridge County.

Action by C. M. Foutty against the Chalmax Sales Company. Judgment for plaintiff, and defendant brings error.

Reversed and remanded.

J. V. Blair and Howard J. James, for plaintiff in error.
L. W. Chapman and J. Ramsey, for defendant in error.

LITZ, JUDGE:

The defendant prosecutes this writ of error to the judgment of the circuit court of Doddridge county, entered on the verdict of the jury in favor of plaintiff for the sum of $1180.00.

Plaintiff sues in assumpsit, and, in his declaration containing two counts, avers that on the 10th day of February, 1921, he purchased from defendant, at the price of $1075.00 (which has been paid), a Maxwell automobile, upon the agreement and warranty of the defendant that the same was a 1921 model, sound, in perfect condition, and free from defects, whereas, in fact, said automobile was a 1920 model, unsound and defective in every particular, and of no use or value to the plaintiff; and that he has thereby suffered damages to the amount of $1500.00.

The evidence discloses that on the 10th day of February, 1921, plaintiff by written order purchased from defendant at the price of $1075.00, "one Maxwell, model 1921, to be delivered at Clarksburg, West Virginia, about May 1st, 1921, or as soon as possible, * * * * 'warranted by the manufacturers under terms of 'standard warranty.' '' ,

He delivered to the defendant then, on the purchase price, cash payment of $50.00, and a Ford coupe automobile valued at $600.00. April 20th, 1921, plaintiff paid the residue of $425.00, and accepting from the defendant, in fulfillment of the contract, a Maxwell automobile which he claims was represented to him by defendant as new, 1921 model, set out with a chauffeur to drive it from defendant's place of business in Clarksburg to West Union, where plaintiff lived, a distance of twenty-eight miles. The plaintiff thereafter operated it (irregularly) on the streets of West Union and the county roads nearby for about thirty days. But the attention of mechanics was, at times, necessary in sustaining its power of locomotion during this brief period. After such use by plaintiff for several weeks, he complained to defendant of its alleged defective condition and on May 30th two men (one a mechanic) sent by defendant from Clarksburg to West Union removed parts of the engine for the purpose of determining the trouble. On receiving this mechanic's report, defendant, by letter of June 10th, advised plaintiff:

"Regarding the motor in new car you purchased from us the first day of May, our mechanic reports that it is in very bad condition due to defective material. The writer has personally taken this matter up with Mr. Reichler of the Maxwell Motor Car Company, who has charge of the service division. Mr. Reichler has agreed to furnish a new motor for your car and we are just in receipt of a letter from him stating that this motor would be shipped at once from their service station at New Castle, Indiana.

"We advised him to ship this motor direct to West Union and we would be pleased to have you advise us upon the arrival of this motor and we will furnish you a mechanic to help install this motor in your car. Please do not have anyone to attempt to fix or do anything whatsoever to the motor that is now installed

in your car as we will have to return this motor as a whole to replace the one you receive."

Plaintiff, through his counsel, L. M. Chapman, on June 13th replied:

"I have just been handed your letter to Mr. Foutty dated June 10th, 1921, in reference to the car sold to him. I do not understand that we care to engage in the repair of an old car of a 1920 model, not having bought a car of that character. We are not going to accept the same and if you have ordered a motor for that car you had better give your company notice by telegram at once.

Mr. Foutty has already been damaged by reason of the loss of the use of his car that he should have had since April 10, 1921, and we are not going to engage in repairing the car that is here. It is here at your service at this time and if you have any use for it you had better take charge of the same."

The "new" engine, which arrived at West Union a few days afterwards, was refused by plaintiff and the car remained (dismantled) in storage where he had placed it before its inspection by defendant's mechanic May 30, 1921.

The plaintiff tried the case as an action for rescission, although the declaration declares upon the contract for breach of warranty. He asserts the right of rescission, which he undertook to exercise through his attorney by letter of June 13th, 1921, upon the claim that the car was a second-hand 1920 model, and, therefore, neither new nor of 1921 model.

The 1920 and 1921 models are very similar, the only difference being in the rear axle gears and pistons. So the 1920 model equipped with the new rear axle gears and pistons became a 1921 model. This car was provided with the new rear axle gears but did not have the improved pistons. Plaintiff knew these facts at the time of receiving it.

He admits that defendant gave him the choice of accepting this car or waiting until another, equipped with the new pistons, could be obtained from the factory. So it would

seem he was not led to believe the car was supplied with all the 1921 attachments.

But he further contends it was represented as "brand new," while its appearance indicated previous use. He says: "I noticed some paint off of it in front of the wind shield, and the top was torn on the inside and I think some paint was off on the inside of the doors." One witness for plaintiff judged it, from the "play in the steering gear," to have been driven possibly two thousand miles. Another thought traces of mud on the bottom evidenced use.

The defendant, on the other hand, insists that the car was all right except for defective engine, which he offered to replace with a new one; and further, that plaintiff could in no event rescind the contract after having kept the car for nearly two months before attempting to do so. Defendant also points out that the "standard warranty" referred to in the written contract, was devised for the protection of purchasers on account of defective parts; and that under this warranty the manufacturer will supply any parts which may have proven defective within ninety days after delivery the machine to the purchaser.

The evidence of value of the car at the time of trial, August 10th, 1922, ranged from two hundred to five hundred dollars, which was, of course, much less than its value when delivered to plaintiff. Notwithstanding this, and that the plaintiff could not recover under the declaration for recission of contract, the verdict was for the full amount of the purchase price with interest, etc. It is, therefore, excessive from any view point, under the declaration, in an amount equal to the value of the car at the time of its delivery, or at least two hundred dollars. If the plaintiff has shown himself entitled to recovery, his damages, under the declaration, should be limited to the difference between the price paid and the value of the machine at the time of its delivery. *Hull* v. *Geary*, 71 W. Va. 490.

For this error, without passing upon the questions of fact presented, the judgment of the circuit court is reversed, the verdict set aside, and a new trial awarded the defendant.

*Reversed and remanded.*