# CHARLESTON.

## C. M. FOUTTY v. CHALMAX SALES COMPANY

### (No. 5131)

Submitted May 19, 1925.   Decided June 2, 1925.

1. EVIDENCE—*Person Skilled in Repairing Automobiles and Acquainted With General Mechanism, With Knowledge of Current Prices and Values of Particular Car, is Competent Witness as to Value After Making Examination.*

   One skilled in repairing automobiles and acquainted with their general mechanism, with knowledge of the current prices and values of a particular make of car, is a competent witness in respect to the value of that particular make of car after he has made an examination of its defective parts and general condition.   (p. 300).

   (Evidence, 22 C. J. § 786).

2. SALES—*Measure of Damages for Breach of Warranty in Sale of Automobile is Difference Between Value Had It Been as Warranted and Actual Value at Time of Delivery; Evidence of Value by Competent Witnesses Who Repaired Automobile Short Time After Delivery, Together With Extent of Use From Day of Delivery, May Be Considered in Suit for Breach of Warranty.*

   The measure of damages for breach of warranty in the sale of such car is the difference between its value had it been as warranted and its actual value at the time of its

delivery; and evidence of its value by competent witnesses who observed it a short time after the delivery together with the extent of its use from day of delivery, may be considered by a jury in a suit for breach of warranty.   (p. 302).

(Sales, 35 Cyc. pp. 463, 468).

3.  SAME—*If Contract for Sale Designates Car as Particular Model, There is Warranty That It Is of Such Model; Delivery of Automobile of Different Model, Represented to be Model Contracted for, Constitutes Breach of Warranty; on Breach of Warranty as to Model of Car Delivered, Buyer May Recover Difference Between Price Paid and Actual Value at Time of Delivery.*

If a contract of sale of an automobile designates it as of a particular model, there is a warranty by the seller that it is of that model; and a delivery of a car of a different model represented to be the model contracted for, constitutes a breach; and the buyer may recover the difference between the price paid and the actual value of the car at the time of its delivery.   (p. 302).

(Sales, 35 Cyc. pp. 386, 441, 470).

4.  TRIAL—*If Instructions Considered as Whole in Light of Evidence Fairly Propound Law, Technical Errors Which Could Not Mislead Will Not Cause Reversal.*

Instructions must be considered as a whole in the light of the evidence and if they fairly propound the law governing the issues, technical errors which could not mislead will be insufficient for reversal.   (p. 304).

WOODS, JUDGE, absent.

(Trial, 38 Cyc. pp. 1777, 1778, 1779).

(Note: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi).

Error to Circuit Court, Doddridge County.

Action by C. M. Foutty against the Chalmax Sales Company.  Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Jackson V. Blair* for plaintiff in error.

*L. W. Chapman, W. S. Stuart,* and *H. L. Hammond,* for defendant in error.

LIVELY, PRESIDENT:

This verdict and judgment is a sequel to the case of *Foutty* v. *Chalmax Sales Co.,* reported in 94 W. Va. 525, 119 S. E.

674. The controversy involves a sale and purchase of a 1921 model Maxwell automobile. The declaration is in assumpsit and is for a breach of warranty, alleging that the purchase from defendant was a 1921 model, sound and in good condition, and free from defects. On the first trial the case was tried upon the theory of rescission, and the jury rendered a verdict for the entire amount paid by plaintiff for the car, $1,075.00. That verdict was set aside and the judgment thereon reversed by this court because, under the declaration the measure of damages to which the plaintiff was entitled was the difference between the sale price of $1,075.00 and the value of the car at the date it was delivered. Upon the second trial, the result of which is now questioned by this writ, plaintiff attempted to show the amount of his damages by proving the amount agreed to be paid for the car, $1,075.00 (about which there is no controversy), and the value of the car at the time of its delivery to him. Five or six witnesses who saw the automobile a short time after it was delivered, some of whom attempted to make repairs upon it, testified that it was then worth from two to four hundred dollars. The verdict was for $700.00, the jury evidently ascertaining the value of the car at the time of delivery to plaintiff to be $375.00. The testimony of these witnesses as to the value at the time of delivery is questioned as incompetent and inadmissible, and this is the first point of error relied upon for reversal. The only other point of error urged is in the instructions given. Each of these points will be discussed later after the statement of facts.

The written order, which is the contract involved, was dated February 10, 1921 and was for a 1921 model Maxwell car to be delivered at Clarksburg about May 1, 1921; payment in full to be made on delivery; "warranted by the manufacturers under terms of 'Standard warranty'." The price was $1,075.00; cash payment $50.00 and a Ford coupe traded in at $600.00, leaving $425.00 to be paid on delivery. This last sum was paid when the car was later delivered. It is stipulated in the contract-order that the terms thereof constitute the contract between the parties and that no verbal

agreements are to be recognized. Plaintiff lived at West Union and defendant did business at Clarksburg, the distance between the points, over the county road being about thirty miles. Plaintiff says that about April 20, 1921, defendant called him up over the 'phone and advised him that his car was on hand, and being short of storage room, they were going to send the car to him at West Union. He replied that he would come to Clarksburg himself for the car and drive it back. On the 20th of April 1921, he went to Clarksburg for the car, accompanied by Mr. Vogedine, who was engaged in selling and operating automobiles and who accompanied him for the purpose of driving the car back and instructing plaintiff how to operate it, the latter having had no experience in driving cars other than the Ford car. Upon arriving at defendant's place of business the car designed for him was pointed out and after a trial trip on the streets the machine being operated by a driver furnished by defendant, the car was turned over to him, and after paying the balance of the purchase price, he began the journey homeward. There is considerable conflict as to what took place at the time of delivery. According to defendant's evidence it was explained to plaintiff that the car was not equipped with the aluminum piston (which was one of the distinguishing features of the 1921 model cars). They told him if he would wait a short while they would have a car for him with an aluminum piston; but that he did not choose to wait. Defendant's witnesses who negotiated the delivery were uncertain as to whether the model of the car was discussed at that time. Plaintiff testified that the defendant's agents told him at the time of delivery that the car was a 1921 model Maxwell. The car delivered was a 1920 model and had been in the possession of defendant from the previous November and had been used in an automobile exhibit in February, 1921. Plaintiff says that on the trial trip over the streets of Clarksburg he noticed the car did not pull a steep part of the street "on high," and that the seller explained that by saying the engine was new. He claims to have noticed other minor defects at that time; that a small portion of the paint or enamel was worn off inside of the car, and there was some rust about it,

and evidences of use were apparent. On the trip home the engine became overheated, all the cylinders did not work, the steering gear was loose and the car did not readily respond; and when they neared the end of the journey about five miles out or more the engine went dead, and it became necessary for plaintiff to telephone to Mr. Murphy who came out and worked with the car for a while after which they were enabled to bring it in. After arriving at home he placed the car in the hands of mechanics for immediate repair or adjustment, and used it for about a month, averaging from two to four miles on the paved street every other day. On a few occasions it was driven on unpaved roads for short distances. The car was not satisfactory and finally did not run. He then complained to defendant who on May 30th, a holiday, sent a mechanic to ascertain its defects. The mechanic and a man accompanying him dismantled the engine of the car and returned to Clarksburg leaving it in that condition. They reported that the engine was of defective material. The car remained in the garage in that condition. Defendant offered to supply a new engine, and wrote a letter to plaintiff on the 10th day of June, stating that a new engine would be sent. About this time plaintiff had made inquiries and ascertained from the sales agency of the Maxwell car at Fairmont that his car was a 1920 model instead of a 1921 model. This agency informed him of the difference, but stated that they were practically the same with the exception of the aluminum piston in the engine. Plaintiff then refused to have anything further to do with the car, and through his attorney notified defendant that it would be useless to send a new engine; that he would not accept it and that he would not consent to repairs being made or new parts being put in a 1920 model, and that, "It is here at your service at this time, and if you have any use for it, you had better take charge of the same." However, an engine was sent from Clarksburg to plaintiff, and was received at the freight depot consigned to plaintiff, who was the railroad agent at that place. He refused to accept the engine and later it was returned. He and several witnesses examined the outside of

the engine through the crate in which it was packed, and they say that the engine was not a new one but was a second-hand affair; while defendant claims that it was a new engine from the factory. Defendant refused to take back the car, the motor of which they had taken down and left in that condition. Defendant insisted on its right under the warranty to supply defective parts of the car; while plaintiff refused to accept the car, it not being a 1921 model for which he had contracted, and because it was not a merchantable car and was not fit for the purpose for which it was intended. Plaintiff testified that he ran the car in the aggregate after bringing it home, about one hundred miles. One of his witnesses, a mechanic who worked at a garage and was experienced in such matters stated that in his judgment the car had been operated a distance of approximately 2,000 miles before plaintiff received it.

Evidently the jury on this conflict of evidence came to the conclusion that plaintiff did not receive the car which he contracted to buy, and that when it was delivered to him he was told it was a 1921 model car, new and unused and of merchantable quality. On this conflict of evidence the finding of the jury will not be disturbed as being contrary to the evidence.

We now come to the assignments of error. The first relates to the testimony of witnesses Murphy, Fleming, Dotson, Stitt, Bond and the plaintiff, all of whom testified as to the value of the car a short time after it was delivered to plaintiff, and these witnesses place its value at from two hundred to four hundred dollars. Murphy was an experienced mechanic with special training and service overseas in the late war in that capacity, and in his several years' experience in the repair of automobiles, had examined and repaired all makes of cars, including the Maxwell. He stated that he had first examined the car on the day of its delivery when he was sent for to repair it so that it could be driven in on the journey home. He further said that from the appearance of the car on the day after its arrival when he examined it casually "the car looked and acted like it had been

run probably two or three thousand miles," and that in his judgment it was a second-hand car. He said the car in its then condition was not worth over three hundred dollars. Fleming was an automobile mechanic in the business about three years. He saw the car when it was brought in and worked on it the next day trying to repair it so that it would run. He says it was a second-hand car and looked like it had been driven "many a thousand miles"; and, while he said he never owned a Maxwell car and did not know the prevailing prices for that car, he fixed the value at the time he worked on it at three or four hundred dollars. Dotson, who rode in the car a short time after it was purchased, and observed it, said that it was no better than a second-hand Maxwell he had formerly owned for which he paid $150.00, put $100.00 worth of repairs on it, and sold the car for $200.00. G. A. Stitt and Ed. Stitt, owners of a garage, and both automobile mechanics, and both of whom saw the car and observed work being done on it a short time after it came to West Union, said that they were familiar at that time with the prices of various automobiles, including the Maxwell, and that in their opinion the car was worth at that time about two or three hundred dollars. Bond was an automobile mechanic and worked for the Stitt's garage for some years. He worked on the car attempting to remedy the defective parts, and he states that the materials were defective and that the last time it was brought into the garage it could not be made to run. He said he knew the prices of Maxwell cars at that time, and he placed a value on the car at not over $300.00. Plaintiff testified to the effect that the car was not worth over $200.00 or $250.00 at the time he received it, although he was without experience except as to Ford cars. Vogedine, who dealt in Maxwell cars and was familiar with them, said he would not like to place a value on the car in the condition he found it, but stated that he would not want to give over two or three hundred dollars for it. It is true that these witnesses, with the exception of Vogedine, were not standing by at the time the car was turned over to the plaintiff at Clarksburg, but they saw and observed

the car and its defects and condition, some the very day when
it was driven in, and others the next day and a few days
afterwards, and we think their evidence is entitled to proba-
tive value.  A car would not have deteriorated much in its
passage from Clarksburg to West. Union, a distance of about
twenty-eight miles, and there is no evidence that it was mis-
used on .that trip.

. The evidence of those witnesses who dealt in cars and who
were familiar with the prices and current values of the Max-
well, and who based their evidence on their observation and
knowledge of the defects and condition of the car, was ad-
missible upon the question of its value.  Berry on Automo-
biles, secs. 1436, 1437.  Perhaps some of the mechanics did
not qualify and their evidence was of little or no value, and
should not have been admitted.  However, it will be noted
that the verdict fixed the value of the car at $375.00, which is
within $25.00 of the highest value shown.  The evidence of
the mechanics who did not qualify as experts on the value
of the car was harmless.

Was there error in the instructions?

That the car was defective, there can be little doubt.  De-
fendant's examination by its mechanic showed the engine to
be constructed of bad material.  There were defects of minor
importance in the other parts.  The defense is based prin-
cipally upon the right of defendant to supply the defective
parts under the manufacturers "Standard Warranty."
Plaintiff refused to allow this to be done; and notified de-
fendant on June 13, 1921, that he need not procure a new
engine, and that defendant had better come. and get the car.
The written order for the car, which was the contract be-
tween the parties, was for a 1921 model, "warranted by the
manufacturers under terms of 'Standard warranty'."  It
seems that under the Standard Warranty the manufacturer
agrees to supply defective parts which shall, within ninety
days after delivery of the automobile to the original pur-
chaser, be returned to the manufacturer.  The sale was made
by defendant direct and not as agents.  The designation of
the car as a 1921 model constituted a warranty that it was

of that model. This warranty was breached by delivering to plaintiff a 1920 model. *J. W. Stringfellow* v. *Botterill Automobile Company,* 221 Pac. 861, 34 A. L. R. page 533 and note on page 537. The case of *Ray Motor Company* v. *Stanyan* (1923) 123 Me. 346 is very similar to the case before us. The Ray Motor Co. had sold to Stanyan a car of a certain make and model, and delivered to him later a car of the type designated, but not the 1921 model he believed he was getting. The car which was defective had been used for demonstration purposes. The guaranty was "that which the Factory gives in their catalog." Stanyan claimed an implied warranty as to the construction and merchantable qualities of the car. The main issue on which the case went to the jury was whether the Motor Company delivered to the purchaser the car which had been sold under the written contract. On the conflicting evidence in that regard the jury found for Stanyan. Rescission was allowed. In the case before us the manufacturer's "Standard Warranty" applies to a 1921 model. Defendant does not deny that the car was a 1920 model, but seeks to take the benefit of the manufacturer's standard warranty by attempting to prove that the car delivered was substantially the same as the 1921 model car and that plaintiff accepted it in fulfilment of the contract. Plaintiff maintains that when the car was delivered it was represented to him to be a 1921 model, and he took it with that understanding. About the 2nd day of June, 1921, he found out that he had been misled as to the model and promptly notified defendant that he would not accept a new motor to go into a 1920 model car. The verdict decides the conflict of fact in plaintiff's favor. Plaintiff would have had the right to rescind. His letter of June the 13th is notice of rescission. But he has elected to waive rescission and sue for a breach of the warranty. There is respectable authority to the effect that where a car is sold which is warranted by the manufacturer in a printed form contract used by the parties, the dealer not acting as agent, an oral warranty as to soundness and fitness may be shown. *Rittenhouse-Winterson Auto Co.* v. *Kissner,* 98 At. (Md.) 361. In *Ray Motor*

*Co.* v. *Stanyan, supra,* the dealer expressly guaranteed the car under the manufacturer's warranty. The instructions for plaintiff are on the theory that plaintiff did not receive the kind of car purchased under the contract, and that there was an implied warranty that it was the kind and description and was a merchantable car fit for the purpose for which it was intended; that plaintiff had the right to rely on the representations made to him when it was delivered that it was the kind of car which he had bought, and if the jury found that he did not receive the car he bought, that it was defective and not fit for the purpose intended and not merchantable, then they should assess his damages at the difference between the price paid and the value of the car when delivered. Criticism is made of these instructions because they did not embody therein the theory of the defense, namely, that if the jury found that plaintiff accepted the car when delivered in satisfaction of the written contract then defendant was relieved from its warranty, if the jury further believed that after defects were discovered by plaintiff, defendant offered and attempted in good faith to supply and make good the defects by new parts, and was prevented from so doing by plaintiff. Defendant offered instructions fully embracing its defense as above indicated and these instructions were given. Considering the instructions as a whole, we can see no substantial error, although some of plaintiff's instructions are inaptly drawn. This is the second trial resulting in plaintiff's favor, and technical error not depriving defendant of a substantial right should not be given undue weight.

The judgment of the circuit court will be affirmed.

*Affirmed.*