THE STATE ROAD COMMISSION OF WEST VIRGINIA,
*a corporation*

*v.*

J. OTIS BOWLING AND IDELL BOWLING

(No. 12759)

Submitted January 28, 1969.          Decided March 4, 1969.

W. Robert Carr, David W. Knight, for plaintiffs in error.

Kwass, Stone & Blue, Fred O. Blue, for defendants in error.

CALHOUN, JUDGE:

This case, on appeal from the Circuit Court of Mercer County, involves an eminent domain proceeding instituted in that court by The State Road Commission of West

Virginia against J. Otis Bowling and Idell Bowling, husband and wife, to acquire for public highway construction purposes a portion of a tract of real estate owned by J. Otis Bowling subject to the inchoate dower rights of his wife. From the action of the trial court in setting aside a jury verdict in the sum of $19,000 and in awarding the defendants a new trial, the state road commission has been awarded a writ of error.

The trial court set aside the jury verdict and awarded the defendants a new trial because of its opinion that it was error for the court to have refused to permit the defendants to introduce certain evidence which would have tended to prove that the land taken had a fair market value based upon or enhanced by its susceptibility for a subdivision development for residential purposes. The condemner contends that the trial court erred in this respect.

Counsel for the defendants contend that the trial court properly set aside the verdict and awarded a new trial for the reason assigned by it for doing so. In conformity with Rule XI of the rules of this Court, as construed in cases including *Payne* v. *Kinder,* 147 W. Va. 352, 127 S. E. 2d 726, counsel for the defendants, by counter-assignment or cross-assignment of error, urge that the trial court acted properly in setting aside the verdict and in awarding a new trial for two additional reasons: first, that the trial court committed reversible error in giving State Road Instruction No. 1, as amended; and second, in refusing to hold that the amount of the verdict is inadequate.

The land acquired for highway construction purposes in this case consisted of 135.6 acres with a dwelling and other improvements thereon which was a part of a farm containing 444.7 acres acquired by J. Otis Bowling in 1930. By an order entered on June 30, 1966, the trial court granted permission to the condemner to enter upon and to appropriate the tract of 135.6 acres for public purposes. Commissioners duly appointed by the court went upon the premises and, by a report dated and filed on February 9, 1967, made an award of $24,750 to the defendants. Both sides excepted to the report of the commissioners and demanded a jury trial.

The jury trial was held in the circuit court on July 5 and 6, 1967. On the first day of the trial, the jury, accompanied by counsel, the court reporter, J. Otis Bowling, the landowner, and Elwood Booth, an engineer for the state road commission, were transported by bus to the Bowling farm to permit the jury to take a view of the premises. Before the jury was taken to the premises, the trial judge called to the attention of the jury the fact that the land taken had been changed in various respects, including the removal of the dwelling, certain outbuildings and shrubbery, since the original entry by the condemner. These changes were clarified in greater detail during the trial by the testimony and by introduction in evidence of various color photographs of the premises which were taken before the construction was commenced. On motion of the defendants, the jury verdict in the sum of $19,000 was set aside and a new trial was awarded by the trial court as previously stated in this opinion.

In the early portion of the testimony of defendant J. Otis Bowling, he was asked by his counsel to identify a map or plat, made at some unspecified time prior to 1950, by which a certain part of the land in question was "laid off in lots." Counsel requested that this map or plat be "received as Defendants' Exhibit One." Thereupon the court stated: "It may be so identified." The witness testified that thereafter, by a deed dated October 11, 1950, he sold and conveyed two lots to Chesley J. Higgins and his wife. The court refused to permit the deed of conveyance to be admitted in evidence but permitted it to be filed and marked as an exhibit.

The deed conveyed two contiguous lots which were described together by metes and bounds as a single parcel of land. The record does not disclose what use, if any, was thereafter made of the two lots by the purchasers. We are unable to find from the record that counsel for the defendants stated the reason for the introduction of the deed and the map or plat in evidence, or that counsel for the defendants were prepared to prove by the witness that the land had a peculiar or enhanced value for subdivision

and development for residential purposes. The record fails to disclose what the nature of the testimony of J. Otis Bowling would have been if he had been asked to give his views or opinion in relation to that subject.

K. B. Thomas, a witness for the defendants, was asked the following question and made the following rather gratuitous, unresponsive and confusing answer: "Q. Did you attempt to segregate it into pasture, crop, or woodland? A. No. There is another method you can value it, then. He had fourteen lots facing on the highway. You gave them five hundred dollars apiece." Counsel for the condemner thereupon stated: "I object to testimony of this sort, *how much value per lot.*" (Italics supplied.) The objection was sustained and the trial judge announced that he would explain later the reasons for his ruling. In subsequently stating the reasons for his ruling, the trial judge explained that the land in question had not lost its identity as a farm, that the map made prior to 1950 "would involve plans and hopes for the future, and this is said to be conjectural and speculative and not admissible * * *." As the basis for that ruling, the court referred to and relied upon 4 Nichols, Eminent Domain, (3rd ed.), Section 12.314, page 140; *Strouds Creek and Muddlety Railroad Company v. Herold,* 131 W. Va. 45, 45 S. E. 2d 513; and *Monongahela West Penn Public Service Company v. Monongahela Development Company,* 101 W. Va. 165, 132 S. E. 380. A more recent case to the same effect is *The State Road Commission of West Virginia v. Ferguson,* 148 W. Va. 742, 137 S. E. 2d 206. We are of the opinion that the decisions of this Court listed immediately above fully sustain the ruling of the trial court.

The record fails to disclose that K. B. Thomas believed that the Bowling land had any peculiar or enhanced value for home construction purposes. Quite the contrary appears because, immediately before he made the statement quoted above, he was asked the following question and gave the following answer on direct examination: "Q. What, in your opinion, did you deem to be the highest and best use of the land? A. As Mr. Bowling was using it: for a homeplace;

some grazing; of course, some second and third-growth timber." In a similar manner, Ben White, Sr., another witness for the defendants, was asked the following questions and gave the following answers: "Q. What did you deem to be the highest and best use of this property? A. I think cattle-raising or horse-raising either one. Q. And has that been the highest and best use that you have considered in connection with your appraisal of the property? A. I based mine on that, yes, sir."

The trial was held seventeen years after the conveyance of two lots by the defendants and more than seventeen years after the map or plat was made. The record is devoid of any showing that the defendants have ever used the land in question except as a home and for farming on a limited scale, particularly for producing hay and for grazing cattle.

State Road Instruction No. 1, the giving of which is assigned as error by counsel for the defendants, is as follows:

> "The Court instructs the jury that it is your duty to ascertain from the evidence in this case what will be a just compensation to the landowner for the real property and improvements taken and used for a right of way for the construction of the public road in question, and also what damages, if any, to the residue of said land.

> "You are further instructed that just compensation means a fair and reasonable cash market value of said land and improvements actually taken, which is the price that property will bring if offered for sale by one who desires, but is not obligated to sell, and is purchased by one who is in no necessity of having it; that it is not a question of the value of the property to the State for use of a public road or the necessity of the State to have such land, nor its necessity to the owner; nor can the value of said property be enhanced or increased by an unwillingness on the part of the landowner to sell it, or because the State may need the same for use of a public road.

> "You are further instructed that the true measure of damages to the residue of the landowner's

property by reason of the construction of said highway in question, from all of the evidence in this case, is the difference between the market value of the property claimed to be damaged thereby immediately before and immediately after the improvement was made."

When the instruction was offered, the only objection made by counsel for the defendants to the granting of it was the use of the word "cash" in the following language in the second paragraph: "* * * a fair and reasonable cash value * * *." The instruction was amended in certain minor particulars at the request of counsel for the defendants. When the instruction was offered in its amended form, no additional objection was made to the granting of it. Thereafter, counsel for the condemner offered an instruction which defined the measure of damages in language which, so far as the record discloses, was unobjectionable to opposing counsel and to the court, except that counsel stated that "it is contrary to Number One." Counsel did not specify wherein the two instructions were inconsistent, though perhaps we may reasonably conclude that counsel was referring to the fact that the first instruction included the word "cash", whereas the second instruction, in defining market value, did not include that word.

When the first instruction was offered and granted in its amended form, counsel and the trial judge apparently believed that the instruction, particularly in relation to the phrase "cash market value", had been approved by this Court in *The State Road Commission of West Virginia v. Darrah*, 151 W. Va. 509, 153 S. E. 2d 408. We believe this construction of the *Darrah* case is both unwarranted and regrettable, though perhaps in some measure understandable in the absence of a careful reading of the opinion in that case.

The instruction in question in the present case embraces only a portion of the lengthy instruction which was granted at the request of the state road commission in the *Darrah* case. A reference to the record in that case discloses that, when the instruction was offered, no objection was made to the inclusion of the word "cash" in the instruction. The

single objection to the instruction in the *Darrah* case related to certain language used in a rather lengthy portion of the instruction which was wholly omitted from State Road Instruction No. 1 in the present case.

A reference to the *Darrah* case will readily disclose that the appeal in that case was by the condemner, and that the Court there stated (151 W. Va. 509, 512, 153 S. E. 2d 408, 411): "The correctness of State's Instruction No. 1 is not challenged on this appeal. In stating the proper measure of compensation, it conforms to prior decisions of this Court. *Strouds Creek and Muddlety Railroad Co.* v. *Herold*, 131 W. Va. 45, pt. 1 syl., 45 S. E. 2d 513, and *State by State Road Commission of West Virginia* v. *Snider*, 131 W. Va. 650, 656-57, 49 S. E. 2d 853, 857." It is obvious, therefore, that the correctness of the instruction in the *Darrah* case was unchallenged in the record before this Court. We believe that the Court was amply warranted in stating in general terms that the instruction in the *Darrah* case, in "stating the proper measure of compensation," conformed substantially with principles adhered to and reiterated in the Court's prior decisions. We were not called upon in that case to examine the instruction critically to determine whether it was in all respects free from technical objection, or whether the measure of damages might have been stated in clearer or more desirable language. Certainly we were not called upon to decide, we did not decide, and perhaps had no right sua sponte to decide, whether the inclusion of the word "cash" in the instruction caused it to have been erroneous and prejudicial to the defendants.

By reason of R.C.P. 81 (a) (6), eminent domain proceedings are not governed by the Rules of Civil Procedure, though consideration presently is being given to a proposal that such rules shall apply, at least in part, to such proceedings. Rule VI (c) of Trial Court Rules for Trial Courts of Record provides, in language similar to that of R.C.P. 51, that in cases such as the present case, "* * * No party may assign as error the giving or the refusal to give an instruction unless he objects thereto before the arguments

to the jury are begun, stating distinctly, as to any given instruction, the matter to which he objects and the grounds of his objection; * * *." See also *State* v. *Etchell,* 147 W. Va. 338, pt. 5 syl., 127 S. E. 2d 609; *Thurston* v. *Keathley,* 143 W. Va. 795, 105 S. E. 2d 181. The only objection specifically or distinctly stated in opposition to the granting of State Road Instruction No. 1 in this case was that "it talks about reasonable cash market value of land actually taken. This goes against all common practices. They don't do it on a cash market basis." If there were error in including the word "cash" in the instruction, probably it should be regarded as invited error, by reason of the fact that Defendants' Instruction No. 1, given and read to the jury without objection, contains the following language: "The Court instructs the jury that in arriving at the fair and reasonable *cash* market value of the land and improvements being actually taken, and the true measure of damages to the residue * * *." (Italics supplied.)

We are of the opinion that the giving of the instruction in question did not constitute prejudicial error because of the inclusion therein of the words "cash market value". We would like to make it clear at this point, as possibly we should have done in the *Darrah* case, that we are not called upon to decide whether the instruction is in all other respects free of error in the wording of the entire instruction. Our decision in this respect relates only to the single objection specifically made by counsel for the defendants at the time the instruction was offered. It will be noted that, in the concluding paragraph, the instruction speaks merely of "the market value". The other instruction granted at the request of the state road commission, which apparently was accepted by opposing counsel and by the court as unobjectionable in form and language, defines 'market value' as used in the instructions given to you * * *."

From a careful reading of the testimony, we fail to find that a single witness was asked to state the fair market value of the real estate on a cash basis, or to differentiate between a fair market value based on a cash payment of the entire purchase price and a fair market value based

on a purchase price consisting in whole or in part of deferred payments. We do not believe, therefore, that the defendants could have been prejudiced by the giving of the instruction here in question. We do not want to be understood as approving the use of the word "cash" in the instruction in this case. We believe its omission from the instruction would have been preferable and that the trial court would have been justified in refusing to give the instruction as it was offered, especially since the substance of the instruction was covered by another instruction given at the request of the condemner.

The doctrine of harmless error is firmly established by statute, court rule and court decisions as a salutary aspect of the law of this state. R.C.P. 61; Code, 1931, 58-1-2 and 3; Code, 1931, 62-2-10 and 11; 1B M. J., Appeal and Error, Section 285, page 418; *State* v. *Riley,* 151 W. Va. 364, pt. 25 syl., 151 S. E. 2d 308; *Boggs* v. *Settle,* 150 W. Va. 330, pt. 2 syl., 145 S. E. 2d 446; *Merchants National Bank of Point Pleasant* v. *Ralphsnyder,* 113 W. Va. 480, pt. 2 syl., 169 S. E. 89; *Zirkle* v. *Moore, Keppel & Company,* 110 W. Va. 535, pt. 1 syl., 158 S. E. 785; *State* v. *Musgrave,* 109 W. Va. 247, 153 S. E. 515; *Hornor* v. *Life, Admr.,* 76 W. Va. 231, pt. 3 syl., 85 S. E. 249.

Instructions must be read as a whole, and if, when so read, it is apparent that they could not have misled the jury, the verdict will not be disturbed, though one of the instructions may have been susceptible of a doubtful construction while standing alone; and mere technical errors which could not have misled the jury will be regarded as insufficient cause for reversal. *Mitchell* v. *The Virginian Railway Company,* 116 W. Va. 739, pt. 2 syl., 183 S. E. 35; *State* v. *Kincaid,* 104 W. Va. 396, pt. 4 syl., 140 S. E. 338; *Dalton* v. *Martin,* 102 W. Va. 595, pt. 3 syl., 136 S. E. 47; *Foutty* v. *Chalmax Sales Company,* 99 W. Va. 300, pt. 4 syl., 128 S. E. 389; *Truman* v. *Wink-O Products Company,* 96 W. Va. 256, 122 S. E. 745; *Karr* v. *Baltimore & Ohio Railroad Co.,* 76 W. Va. 526, pt. 3 syl., 86 S. E. 43; *Neil, Admr.* v. *West Virginia Timber Company,* 75 W. Va. 502, pt. 4 syl., 84 S. E. 239; *Stewart* v. *Parr,* 74 W. Va. 327, pt.

2 syl., 82 S. E. 259; 5 Am. Jur. 2d, Appeal and Error, Section 810, page 251. Ordinarily a verdict which is clearly supported by the law and evidence should not be disturbed even if an instruction granted is erroneous. *Akers v. Norfolk & Western Railway Company,* 112 W. Va. 388, 164 S. E. 413; *Harry B. Coal Company v. Deveny-Murphy Apartment Company,* 100 W. Va. 629, 131 S. E. 354.

We are of the opinion that the Court would not be warranted by law in holding that the jury verdict for $19,000 is inadequate in its amount. It was based on conflicting testimony, or differing opinions of the various witnesses, on the question of the just compensation the defendants were entitled to recover. J. Otis Bowling, in his testimony, expressed the opinion that the amount of the recovery should be $35,615. Three witnesses called in behalf of the defendants gave opinions, respectively, of $30,125, $27,335 and $24,602. The two witnesses called by the condemner to estimate the amount of just compensation testified, respectively, to opinions of $16,980 and $15,000. That which a jury observes upon a view, so far as pertinent to show anything proper to be proved, may be considered by the jury the same as any other evidence introduced in the case. *Moore, Kelly & Reddish, Inc. v. Shannondale, Inc.,* 152 W. Va. 549, pt. 3 syl., 165 S. E. 2d 113. The same rule applies to a jury view in an eminent domain proceeding. *The State Road Commission of West Virginia v. Milam,* 146 W. Va. 368, pt. 1 syl., 120 S. E. 2d 254.

In condemnation proceedings, courts will rarely set aside jury verdicts on the ground of excessiveness or inadequacy where there is a conflict in the testimony concerning the amount of just compensation and the verdict is founded on a reasonable view of the evidence, strengthened by the jury's view of the premises. Where damages are indeterminate in character, a mere difference of opinion between the court and the jury will not justify the action of the court in setting aside the verdict. *Tennessee Gas Transmission Company v. Fox,* 134 W. Va. 106, 120-21, 58 S. E. 2d 584, 593; *State Road Commission v. Moss,* 108 W. Va. 267, 150 S. E. 722; *The County Court of Mingo County v.*

*Chattaroy Coal Company,* 105 W. Va. 321, pt. 1 syl., 142 S. E. 430; *State Road Commission of West Virginia* v. *McMurray,* 103 W. Va. 346, pt. 8 syl., 137 S. E. 530; *Baltimore & Ohio Railroad Co.* v. *Bonafield's Heirs,* 79 W. Va. 287, pt. 8 syl., 90 S. E. 868.

We are of the opinion that the case was fairly tried, that no prejudicial or reversible error is disclosed by the record and that the trial court erred in setting aside the verdict and in awarding the defendants a new trial. *Earl T. Browder, Inc.* v. *County Court of Webster County,* 145 W. Va. 696, pt. 7 syl., 116 S. E. 2d 867. Code, 1931, 58-5-25, contains the following language: "* * * In the case of an appeal from an order granting a new trial or rehearing, if the order be reversed, such final judgment, decree or order shall be rendered or made in the case as the appellant was entitled to in the court below. * * *." See *Bronson* v. *Riffe,* 148 W. Va. 362, pt. 4 syl., 135 S. E. 2d 244.

For reasons stated in this opinion, the judgment of the Circuit Court of Mercer County is reversed, the verdict of the jury is reinstated and judgment on such verdict is rendered in this Court.

> *Judgment reversed;*
> *verdict reinstated;*
> *judgment rendered*
> *by this Court.*