# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

**November 22, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs)  No. 13-0573** (Braxton County 12-F-27)

**John H. Carroll,**
**Defendant Below, Petitioner**


## MEMORANDUM DECISION

Petitioner John H. Carroll, by counsel Kevin W. Hughart, appeals from the sentencing order of the Circuit Court of Braxton County following his conviction of the felony offenses of malicious assault and destruction of property and the misdemeanor offense of assault. The State of West Virginia, by counsel Scott E. Johnson, filed a response. Petitioner filed a reply. On appeal, petitioner requests a new trial arguing that the circuit judge erroneously told a juror during a jury view of the crime scene that what he viewed at the scene should be weighed more heavily than diagrams developed by petitioner's expert.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was convicted following a jury trial of the felony offenses of malicious assault and destruction of property and the misdemeanor offense of assault, stemming from his ramming a State Police cruiser with his vehicle and threatening a child protective services worker. The circuit court sentenced petitioner to a total term of incarceration of not less than four years nor more than twenty-five years and six months and ordered petitioner to pay a fine in the amount of $200 and to make restitution to the trooper for medical expenses.

The evidence at trial revealed that on July 25, 2011, child protective services worker Stephanie Verah requested that State Police Corporal Daniel Burge assist her in removing a child from a home. Ms. Verah and Cpl. Burge proceeded in separate vehicles to a home where they believed the child was residing. After not finding the child at that home, they visited other homes where they believed the child might be. Eventually, they were advised by the child's maternal grandparents that the child was at the home of John and Donna Carroll, the child's paternal grandparents.

1

Ms. Verah and Cpl. Burge traveled to the Carrolls' home, with Ms. Verah following in her vehicle behind Cpl. Burge in his cruiser. As they approached the residence, Cpl. Burge testified that he could hear a vehicle engine revving loudly and coming directly towards him, but he could not reverse because Ms. Verah was behind him. Petitioner then rammed into Cpl. Burge's cruiser with his pickup truck causing the cruiser's air bags to deploy. The testimony revealed that petitioner did not let off the gas prior to striking Cpl. Burge's cruiser.[1] In addition, despite the fact that it was dark and raining outside, petitioner had not turned on his headlights.

Cpl. Burge crawled from his cruiser, injured and dizzy, then approached the pickup truck and witnessed petitioner behind the wheel. Petitioner laughed and said, "How do you like me now, mother f****r?" In addition, petitioner threatened to kill Cpl. Burge and Ms. Verah, yelling that they had no right to be at the home. Petitioner ordered Cpl. Burge to "get that bitch out of here," referring to Ms. Verah, who locked herself in her vehicle out of fear. Both Cpl. Burge and Ms. Verah testified that they believed they were going to be killed.

Petitioner's defense was that the collision itself was accidental and that he became argumentative only after Cpl. Burge blamed him for the collision. The evidence also revealed that petitioner's family had prior negative dealings with both child protective services and law enforcement.

Prior to trial, the court granted petitioner's motion for a jury view of the crime scene. In his motion, petitioner asked that the "jurors be permitted to weigh the testimony against the defendant (and the testimony in favor of the defendant) with the information and insight gained from an on-site inspection of the relevant collision scene." After opening statements, petitioner provided each juror with a Uniform Traffic Crash Accident Report and a diagram that petitioner's expert had prepared.[2] Thereafter, the jury visited the scene where the following exchange occurred between the judge and one of the jurors:

> JUROR:     You may not be able to answer this. From what I understood, you know, sitting in the courtroom, they said that when they entered the driveway, of course, these two don't match nothing.
>
> [Referring to the documents that were handed out.]
>
> JUROR:     When they entered the driveway, they said they could see lights. They said a slight bend in the road, that's not a slight bend. There's no way you could see a light.
>
> THE COURT:     And that's something you'll have to use your judgment when you hear the testimony. Yeah.

---

[1] The emergency room physician who treated Cpl. Burge testified that Cpl. Burge suffered abrasions and contusions on both arms and a strained cervical spine.

[2] The view took place after opening statements, but prior to any testimony.

JUROR:          Okay.

THE COURT:          All right. Thank you. And I might point out to you, you have those maps, but I don't think they're to scale. So the primary thing is what you observe here. So if it appears to you that it differs on the maps from what you observe, you base it upon your observations here. Just like if the attorneys recall the testimony differently from how you recall it, you base your decision on how you recall the testimony, because you'll hear it just like they are. And the main thing for a view is to just get you out here to the scene so that when you hear the testimony of what happened, you'll visualize where everything is, and that's the reason. Sometimes I can't answer things for you because I can't give you facts; those have to come from the witnesses. Okay. If I give you facts, that's error and subject to, then, anything you do being reversed and have to retry it.

JUROR:          So is there going to be pictures of this down there?

MR. KARR [petitioner's trial counsel]:          Your honor, I think we're stipulating to---

THE COURT:          Yeah. They're stipulating or agreeing to certain pictures, yeah. Yeah. Okay. We're going to go back and get on the van and go back and start taking testimony. So if you could, get back on the van, go back to the courthouse and then go ahead and get in the jury box and we'll get started. Okay.

The parties and the jury then returned to the courtroom. At no time did petitioner object with respect to the judge's statements to the individual juror. In addition, it is not clear whether the other jurors heard the conversation between the judge and the individual juror.

The jury convicted petitioner of malicious assault on Cpl. Burge, destruction of property with respect to Cpl. Burge's cruiser, and assault on Ms. Verah.[3] The court entered its sentencing order on April 25, 2013, and this appeal followed.

Petitioner's sole assignment of error is that the circuit court "erred when at the jury view it instructed jurors to choose their observations, which were made while viewing the crime scene, over evidence that was entered as an exhibit during the trial." Petitioner argues that "[t]hat which a jury observes upon a view, so far as pertinent to show anything proper to be proved, may be considered by the jury the same as any other evidence introduced in this case." *State Road Commission v. Bowling,* 152 W.Va. 688, 698, 166 S.E.2d 119, 126 (1969) (citing Syl. Pt. 3, *Moore, Kelly, and Reddish, Inc. v. Shannondale,* 152 W.Va. 549, 165 S.E.2d 113 (1968)). In *Shannondale,* a defendant made comments to jurors during a view that what the jurors were

---

[3]Petitioner was also charged with battery on Sergeant Andrew Shingler, who arrived at the scene to assist Cpl. Burge. The State alleged the petitioner head-butted Sgt. Shingler as he was apprehending petitioner. The jury acquitted petitioner of this charge.

3

viewing would line up with photos that would be introduced at trial. The defendant's statements prompted plaintiff to move for a mistrial, which the court denied, but then instructed the jury to disregard defendant's statements. This Court upheld the verdict and stated that any error was cured by the instruction.

Petitioner asserts that the present case is different than *Shannondale* because it was the judge who made the statement, and not a party. Petitioner argues that the judge's statements negated the value of the diagrams that petitioner used at trial and admitted into evidence as exhibits. If it was a party who made the statement during the view, then an instruction could have possibly cured the error, but petitioner argues that the jury was bound to follow the judge's statement because jurors are sensitive to every utterance from the judge. *See Nash, et al. v. Fidelity-Phenix Fire Insurance Co.,* 106 W.Va. 672, 146 S.E.2d 726 (1929).

The State correctly points out in its response that petitioner waived any error with respect to the judge's statements because his counsel failed to object. "Time and again, we have reiterated that '[t]o preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect.'" *State v. Ladd,* 210 W.Va. 413, 428, 557 S.E.2d 820, 835 (2001) (quoting from Syllabus Point 2, *State ex rel. Cooper v. Caperton,* 196 W.Va. 208, 470 S.E.2d 162 (1996)). In addition, petitioner does not assert plain error in his initial brief.[4]

Even if we were to apply a plain error analysis to petitioner's assignment of error,[5] we see no basis for a new trial. In Syllabus Points 13 and 14, respectively, of *Ladd,* this Court held:

"To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syllabus Point 7, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995).

"Assuming that an error is 'plain,' the inquiry must proceed to its last step and a determination made as to whether it affects the substantial rights of the defendant. To affect substantial rights means the error was prejudicial. It must have affected the outcome of the proceedings in the circuit court, and the defendant rather than the prosecutor bears the burden of persuasion with respect to prejudice." Syllabus Point 9, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995).

In this case, petitioner characterizes the circuit judge's statements during the view as "instruct[ing] jurors to disregard information that was later introduced into evidence" and argues that the statement rendered it impossible for petitioner to receive a fair trial. Importantly, however, petitioner does not explain the difference between the content of his expert's diagram

---

[4]Petitioner first claims plain error in his reply brief.

[5]In Syllabus Point 1 of *State v. Myers,* 204 W.Va. 449, 513 S.E.2d 676 (1998), we held that "[the] application of the plain error rule in a criminal prosecution is not dependent upon a defendant asking the Court to invoke the rule. We may, sua sponte, in the interest of justice, notice plain error."

as opposed to the actual scene, or how this difference, if any, affected the trial. Petitioner simply concludes that "it was detrimental to petitioner's case." Our review of the transcript of the exchange at the jury view does not support petitioner's characterization of the judge's statement. Therefore, even if we were to assume arguendo that the judge's statement was (1) an error that (2) was plain, the record simply does not demonstrate that petitioner was prejudiced, i.e, that the exchange affected the outcome of the proceedings in the circuit court. Insofar as petitioner's expert's diagram supported his theory of defense at trial that the collision was accidental, there were eye witnesses to the collision and to petitioner's threats. Additionally, Cpl. Burge testified that petitioner laughed after ramming the cruiser and said "How do you like me now, mother f****r?" Petitioner's own words were damning to his defense. We cannot, therefore, conclude that a new trial is warranted under a plain error analysis.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 22, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II